1  Sanford L. Michelman (SBN 179702)
   smichelman@mrllp.com
2  Mona Z. Hanna (SBN 131439)
   mhanna@mrllp.com
3  Melanie Natasha Howard (SBN 250936)
   mhoward@mrllp.com
4  **MICHELMAN & ROBINSON, LLP**
   17901 Von Karman Avenue, 10th Floor
5  Irvine, CA  92614
   Telephone:  (714) 557-7990
6  Facsimile:   (714) 557-7991

7  David C. Lee (SBN 193743)
   dlee@mrllp.com
8  Ilse C. Scott (SBN 233433)
   iscott@mrllp.com
9  **MICHELMAN & ROBINSON, LLP**
   One Post Street, Suite 2500
10 San Francisco, CA  94104
   Telephone:  (415) 882-7770
11 Facsimile:   (415) 882-1570

12
   *Attorneys for Plaintiffs and Proposed Class*
13

14            **UNITED STATES DISTRICT COURT**

15        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16

17  DAVID LOWERY, VICTOR              Case No.:
    KRUMMENACHER, GREG LISHER,
18  and DAVID FARAGHER, individually
19  and on behalf of themselves and all   **CLASS ACTION COMPLAINT FOR**
    others similarly situated,            **DAMAGES AND INJUNCTIVE**
20                                        **RELIEF**
21            Plaintiffs,                 **DEMAND FOR JURY TRIAL**
22       v.
23
    RHAPSODY INTERNATIONAL,
24  INC., a Delaware corporation,
25
              Defendant.
26

27       Plaintiffs David Lowery, Victor Krummenacher, Greg Lisher, and David

28  Faragher (collectively "Plaintiffs"), individually and on behalf of themselves and all

                                    1
                        **CLASS ACTION COMPLAINT**
   24493

those similarly situated (each, a "Class Member" and, collectively, the "Class")
allege as follows:

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiffs, on behalf of themselves and
the numerous other similarly-situated holders of mechanical rights in copyrighted
musical works that Defendant Rhapsody International, Inc. ("Rhapsody" or
"Defendant") has used without mechanical licenses in an egregious, continuous and
ongoing campaign of deliberate copyright infringement.

2.      Specifically, Rhapsody has — and continues to — unlawfully reproduce
and/or distribute copyrighted musical compositions (the "Works") to millions of
users via its interactive commercial music streaming service, as well as its offline
listening service.   Rhapsody reproduces and/or distributes the Works despite its
failure to identify and/or locate the owners of those compositions for payment or to
provide them with notice of Rhapsody's intent to reproduce and/or distribute the
Works.

3.      Rhapsody's infringement of Plaintiffs' and the Class Members'
mechanical rights is knowing and willful.  Such use of the Works creates substantial
harm and injury to the copyright holders, and diminishes the integrity of the Works.
Rhapsody's knowing and willful infringement is unlawful and without justification,
as Rhapsody has continuously failed to use any one of the many available
mechanisms to properly obtain authorization for the reproduction and/or distribution
of the Works, whether in the form of a voluntary or compulsory license, and whether
or not the rightsholder is readily identifiable.  Touted as one of the earliest U.S.-based
subscription streaming services, Rhapsody has a significant and impactful presence in
the music industry, and the available resources to properly obtain all requisite
licenses.  Rhapsody's current illegal practices and procedures in connection with its
unlicensed reproduction and/or distribution of the copyrighted Works, combined with

**CLASS ACTION COMPLAINT**

24493

1  its failure to pay owed mechanical royalties, evidences its practice of unfairly

2  profiting off the backs of composers.

3                              **JURISDICTION AND VENUE**

4         4.      This action is a civil action over which this court has original

5  jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that the claims herein arise under

6  federal copyright law (17 U.S.C. § 101, *et seq.*) (the "Copyright Act").   Jurisdiction

7  also exists pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy

8  exceeds the sum or value of $5,000,000 (exclusive of interest and costs), is a class

9  action in which a member of the proposed class, including Plaintiffs, is a citizen of a

10 state different from Defendant Rhapsody, and the number of members of the

11 proposed class exceeds 100.

12        5.      Venue in this District is proper under 28 U.S.C. § 1391(b) and/or 28

13 U.S.C. § 1400(a).   On information and belief, a substantial part of the acts of

14 infringement complained of herein occurs or has occurred in this District, and

15 Defendant is subject to personal jurisdiction in this District.

16                                  **THE PARTIES**

17        6.      Plaintiffs and the Class are individuals and entities residing in the United

18 States and each of whom, during the Class Period (as defined herein), own the

19 reproduction and distribution rights of copyrighted musical works reproduced and

20 distributed by Defendant Rhapsody.

21        7.      Plaintiff David Lowery is an individual who is a resident of Georgia.

22 Mr. Lowery has been a fixture of the music industry for decades, and like the

23 members of the class, has made his livelihood creating and performing music.   Mr.

24 Lowery is a prolific songwriter and producer, and is the author or co-author of more

25 than 150 songs for his popular groups Cracker and Camper Van Beethoven.   Both

26 Cracker and Camper Van Beethoven were formed in California.   Mr. Lowery

27 recorded many of his musical compositions, which are at issue in this lawsuit, in

28 California. Mr. Lowery also tours and maintains his booking agency California.

**CLASS ACTION COMPLAINT**

24493

8.     Plaintiff Victor Krummenacher is an individual who is a resident of California, residing in the City and County of San Francisco.  Mr. Krummenacher co-founded the band Camper Van Beethoven.  Like Mr. Lowery, Mr. Krummenacher is a prolific songwriter, and is the author or co-author of numerous musical works, including many recorded by Camper Van Beethoven.  In addition to authoring and/or co-authoring musical works for Camper Van Beethoven, Mr. Krummenacher has also released multiple solo albums containing numerous sound recordings that embody his musical works.

9.     Plaintiff Greg Lisher is an individual who is a resident of California, residing in the City and County of Santa Cruz.  Mr. Lisher is a renowned musician and a member of the band Camper Van Beethoven, and is an author or co-author of numerous musical works, including many recorded by Camper Van Beethoven.  In addition to authoring and/or co-authoring musical works for Camper Van Beethoven, Mr. Lisher has also released multiple solo albums containing numerous sound recordings that embody his musical works.

10.     Plaintiff David Faragher is an individual who is a resident of California, residing in the City and County of Los Angeles.  Mr. Faragher co-founded the band Cracker, and has authored or co-authored numerous musical works recorded by that band.  In addition, Mr. Faragher is a renowned musician who has collaborated with numerous other well-known artists.

11.     Defendant Rhapsody is a Delaware corporation with its principal place of business at 701 5ᵗʰ Avenue, Suite 3100, Seattle, Washington 98104.  Rhapsody is duly qualified to do and is doing business in California.  It has a California agent for service of process. It operates an office in San Francisco, California.  On information and belief, Rhapsody pays California taxes, and owns and/or leases real property in California for its San Francisco office.  Moreover, the data relevant to Rhapsody's infringing activities is primarily electronic and can be made available with ease in California.

4
**CLASS ACTION COMPLAINT**

12.   Through its interactive Internet-based and application-based services, Rhapsody enters into commercial transactions, contracts and other arrangements with residents of California.  Rhapsody's current End User License Agreement ("EULA") specifically provides that it shall be governed by the laws of the State of California. That same EULA designates, in its forum selection clause, that all disputes will be subject to the "exclusive jurisdiction of the state and federal courts sitting in San Francisco, in the State of California" which exhibits Rhapsody's recognition that this District is an appropriate venue.   (See, Rhapsody's EULA from its website www.rhapsody.com, attached hereto as Exhibit A).   On information and belief, Rhapsody advertises directly to California consumers.   Performance of various of Defendant's contracts results in the knowing and repeated unlicensed reproduction and distribution of musical works over the Internet to California residents. Defendant's online activities knowingly and purposely interact with the computers and other electronic devices of residents in California and solicit business from California consumers.

## FACTUAL BACKGROUND

13.   Plaintiffs and the Class are the copyright owners or owners of exclusive rights in numerous copyrighted compositions in the United States, and have the mechanical rights to these Works.

14.   Pursuant to the Copyright Act, Plaintiffs and the Class possess exclusive rights regarding the reproduction and/or distribution of the copyrighted Works, including the associated licensing rights to such activities.

15.   Plaintiffs and the Class distribute, sell and/or license the Works in the form of CDs, cassettes, and other tangible media throughout the United States, including in California.  Plaintiffs and the Class reproduce, distribute, sell, and/or license the Works in the form of digital audio files delivered and performed via the Internet.

**CLASS ACTION COMPLAINT**

24493

16.     Plaintiffs and the Class have invested and continue to invest substantial money, energy, time, effort and creative talent to create and develop the Works.

17.     Rhapsody is an interactive commercial music streaming service (among other services) that operates an Internet website (www.rhapsody.com) permitting users to customize listening choices for recorded music and to create Internet "radio stations."  Its Internet services are downloadable to computers and handheld devices (via mobile applications) making its streaming capabilities widely available to millions of users.  Indeed, Rhapsody boasts that users can "[s]tream millions of songs or download unlimited playlists and songs straight to your phone or tablet and never miss a beat."    (See, Rhapsody's Apps and Devices page on its website www.rhapsody.com, attached hereto as Exhibit B).

18.     Rhapsody offers its services to the public via different subscription-based packages: (1) its "unRadio" platform (an internet radio service launched in or around June 2014); and (2) its "Premier" platform.  Both subscription platforms are offered to prospective subscribers on a limited "free trial" basis.

19.     The "unRadio" subscription (costing $4.99 per month) permits users to:

- Access a "Personalized radio based on your favorite artist or track";
- "Skip as many songs you want";
- Enjoy "High quality, ad-free audio on mobile and on your computer"; and
- "Download any song to listen offline – up to 25 songs."    (*See* www.rhapsody.com.)

20.     The Premier tier (costing $9.99 per month) offers subscribers the same unRadio features, plus the following benefits:

- "Download any song to listen offline – unlimited";
- "Unlimited, on-demand access to millions of songs";
- "Listen on home audio devices":
- A "DJ with Rhapsody" feature for kids; and

**CLASS ACTION COMPLAINT**

24493

- "Family plans" (which allow up to 5 separate accounts on a single family plan to permit simultaneous use of the Premier platform of Rhapsody). (*See* www.rhapsody.com.)

21.    Rhapsody's website currently boasts that its "leading streaming music services" give members "ad-free access to more than 32 million songs." (*See* www.rhapsody.com.)  As of December 2011, Rhapsody claimed that it had surpassed 1 million subscribers.   As of July 2014, Rhapsody boasted 2 million paying subscribers for its streaming services.  (See, Rhapsody's July 29, 2014 press release from its website www.rhapsody.com, attached hereto as Exhibit C).  As of July 2015, Rhapsody claimed to have surpassed 3 million worldwide subscribers.   (See, Rhapsody's July 22, 2015 press release from its website www.rhapsody.com, attached hereto as Exhibit D). Consequently, Rhapsody earns millions of dollars in revenues for its services, including from residents of California.

22.    Rhapsody's Internet music service is intended to and does promote Rhapsody's services in a manner designed to attract free-trial users and paid subscribers of its services.

23.    Rhapsody regularly reproduces and/or distributes to listeners and users of its services Plaintiffs' and Class Members' musical compositions, and has done so repeatedly for at least the past three years.  In the course of rendering services to its subscribers, Rhapsody reproduces and/or distributes Plaintiffs' and Class Members' musical compositions numerous times.

24.    Rhapsody has not licensed Plaintiffs' and the Class Members' musical compositions as required to reproduce or distribute the Works to its users and subscribers.

25.    On information and belief, a significant number of Californians would have paid to listen to and enjoy Plaintiffs' and Class Members' musical compositions through mechanisms other than Rhapsody (e.g., through the purchase of digital downloads) if the Works had not been reproduced and/or distributed by Rhapsody,

**CLASS ACTION COMPLAINT**

24493

and Rhapsody's willful infringement has thus diminished the California-based value of these Works.  Further, it was foreseeable to Rhapsody that its willful infringement would diminish the California-based value of the infringed Works.

26.     An interactive service such as Rhapsody, interested in reproducing and/or distributing musical compositions embodied in phonorecords, can obtain either a voluntary license, secured by negotiating with individual copyright owners, or a compulsory license, as outlined under 17 U.S.C. § 115.  A compulsory license is not granted automatically under the Copyright Act.  In order to obtain a compulsory license, Rhapsody is required to send a notice of its intent to use musical compositions to each copyright owner "before or within thirty days after making, and before distributing any phonorecords of the work." *See* 17 U.S.C. § 115(b)(1).  This notice of intention to obtain a compulsory license – commonly referred to as a "NOI" – serves the vital function of alerting copyright owners to the use of their musical compositions and, in turn, the right to compensation for that use.  The failure to timely file or serve a NOI "forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement." 17 U.S.C. §115(b)(2).

27.     Rhapsody has not obtained voluntary or compulsory licenses for the reproduction and/or distribution of the musical compositions at issue in this litigation.  While Rhapsody has reaped the financial rewards of repeatedly violating the Copyright Act, musical composition rightsholders are left emptyhanded.  This failure can only lead to one conclusion: that Rhapsody values the expediency and financial benefits of wholesale copyright infringement over the cost associated with obtaining the appropriate license.

28.     Rhapsody's unlawful reproduction and/or distribution of Plaintiffs' and Class Members' copyrighted works has substantially harmed and continues to harm Plaintiffs and the Class Members.

**CLASS ACTION COMPLAINT**

24493

29.   Plaintiffs can identify all of the copyrighted musical compositions for which they own the mechanical rights, and which Rhapsody has illegally reproduced and/or distributed for its users.   A brief, non-exhaustive and illustrative list of Plaintiffs' infringed Works include, but is not limited to, the following compositions (among many others):   "Almond Grove", Copyright Registration No. PAu003764032; "Get On Down the Road", Copyright Registration No. PAu003745342; "King of Bakersfield", Copyright Registration No. PAu003745341; "Tonight I Cross the Border", Copyright Registration No. PAu003745338; "Sugartown", Copyright Registration No. PA0001919183; "Out Like A Lion", Copyright Registration No. PA0001919183; "Darken Your Door", Copyright Registration No. PA0001919183; and "You Got Yourself Into This", Copyright Registration No. PAu003745326.   Plaintiffs have received Certificates of Copyright Registration from the Register of Copyrights for these Works. (See Exhibit E.)  On each of the Certificates of Copyright Registration attached hereto, Plaintiffs' identifying information is readily available, as is the contact information with respect to requesting rights and permissions in connection with those registered Works.

30.   Indeed, in admission of its wrongdoing, in February 2016, Rhapsody (through its third party agent the Harry Fox Agency) issued forty-four NOIs to Plaintiff Lowery pertaining to approximately 100 different musical works embodied in sound recordings by Cracker and Camper Van Beethoven (the "2016 NOIs").   The 2016 NOIs (all identifying Rhapsody as the "Licensee") reflect unlawfully backdated "Expected Date[s] of Distribution" ranging from February 2, 2005 to June 3, 2015. Given Rhapsody's failure to timely transmit NOIs pursuant to 17 U.S.C. § 115(b)(1), the 2016 NOIs are invalid, and Rhapsody is foreclosed from the "possibility of a compulsory license" and its failure to alternatively obtain a negotiated license from Plaintiffs renders Rhapsody's unlicensed making and distribution of Plaintiffs' musical works "actionable as acts of infringement" pursuant to 17 U.S.C. §115(b)(2).

24493

31.     Rhapsody's egregious and willful violations of Plaintiffs' and the Class Members' rights are highlighted by its 2016 NOIs containing the conspicuously backdated "Expected Date[s] of Distribution."   Moreover, in addition to its own ability to research the identity of mechanical rights owners, Rhapsody utilizes the Harry Fox Agency to provide its mechanical licensing services, which on information and belief, controls one of the largest databases on music compositions in the world, and the most comprehensive database in the United States.   As the 2016 NOIs demonstrate, Rhapsody, either directly or through its agent, the Harry Fox Agency, possessed the means to identify and locate the rightholders of musical works being reproduced and/or distributed on its streaming platform, but opted not obtain the required licensing prior to streaming such musical works.

32.     Indeed, the Copyright Act also provides a specific methodology to obtain a mechanical license for the distribution and/or reproduction of copyrighted works even when the licensee has conducted a search for the rightsholder but has been unable to identify him or her.   Specifically, 17 U.S.C. §115(b)(1) provides that, "If the registration or other public records of the Copyright Office do not identify the copyright owner and include an address at which notice can be served, it shall be sufficient to file the notice of intention in the Copyright Office."   Per the U.S. Copyright Office. (rev. 10/2015) Circular 73, Compulsory License for Making and Distributing Phonorecords (attached hereto as Exhibit F), only two steps are needed to effectuate such notice:  (1) file an NOI in the Licensing Division of the Copyright Office; and (2) send the Copyright Office a statutory filing fee for each title listed in the NOI.  (*Id.*, at 3.)   The NOI filing fees, effective May 1, 2014, are $75 for the first title, and $20 for each additional title (per group of 10).   (*See* U.S. Copyright Office, "Licensing Fees", *available at* http://copyright.gov/licensing/fees.html (last visited Feb. 28, 2016).   There is no valid reason for Rhapsody's failure to use this statutory procedure for obtaining a compulsory license for the Works where the copyright owner is legitimately unknown, leading to the ineluctable conclusion that Rhapsody

**CLASS ACTION COMPLAINT**

24493

1 | (1) failed to make reasonable efforts to identify the rightsholders, and/or (2) decided

2 | not to comply with the compulsory licensing process for unidentified rightsholders.

3 |      33.   As a direct and proximate result of Rhapsody's conduct alleged herein,

4 | Plaintiffs and the Class Members are entitled to recover all proceeds and other

5 | compensation received or to be received by Rhapsody for its failure to pay royalties.

6 | This includes any interest accrued on the royalty funds inappropriately withheld from

7 | Plaintiffs and the Class Members.  Plaintiffs and the Class Members have been

8 | damaged, and Rhapsody has been unjustly enriched, in an amount that is not as yet

9 | fully ascertained but which Plaintiffs is informed and believes is not less than

10 | $150,000,000, according to proof at trial.

11 |      34.   The Copyright Act provides statutory penalties to discourage

12 | Rhapsody's infringement, including statutory damages awards of between $750 and

13 | $30,000 for each infringed work, and up to $150,000 for a willful infringement.

**CLASS ALLEGATIONS**

15 |      35.   Plaintiffs bring this action on behalf of themselves and on behalf of all

16 | other similarly situated owners of mechanical rights for registered musical

17 | compositions, which rights were improperly infringed by Rhapsody's unlicensed

18 | reproduction and/or distribution of those compositions.  The proposed class is

19 | comprised of and defined as follows:

20 |       All owners of mechanical distribution and reproduction rights in

21 |       musical compositions registered under United States federal law,

22 |       which compositions were reproduced or distributed by Rhapsody

23 |       without Rhapsody first obtaining a voluntary or compulsory license,

24 |       since March 7, 2013.

25 | As defined above, the proposed class does not consist of the following individuals

26 | (among others):   nonrightsholders of mechanical rights, owners of musical

27 | compositions that are not registered under United States federal law, and owners of

28 |

**CLASS ACTION COMPLAINT**

24493

registered compositions for which a voluntary or compulsory mechanical license was provided to Rhapsody.

36.    This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable. The required elements of membership for the class, such as ownership of mechanical distribution and reproduction rights in registered musical compositions within a particular time frame are objective and ascertainable.

37.    The class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.  Plaintiffs are informed and believe that there are hundreds or thousands of class members and that those class members can be readily ascertained from Rhapsody's database files and records, and via discovery in this action.  For example, Rhapsody should maintain records of all of the musical compositions it reproduces or distributes.  Upon information and belief, Rhapsody has ready access to the largest database of mechanical rightsholders in the United States, via its agent, the Harry Fox Agency, in order to identify class members. Rhapsody may also access the United States Copyright Office's catalogue and other records to conduct a search, or have the Copyright Office conduct a search for Rhapsody.   In addition, upon information and belief, Rhapsody also maintains records of rightsholders who have submitted complaints to Rhapsody for its use of their Works without license.  Rhapsody may also seek to obtain information about potential class members from performing rights organizations such as ASCAP, BMI, or SESAC.  There are also third party interactive streaming music royalty collection agencies which may conduct audits to identify the musical compositions for which Rhapsody has failed to obtain mechanical licenses.   Of course, potential class members may also, and already have, self-identify.  The Class Members can also be readily located and notified of this action.

24493

38.     The claims of Plaintiffs are typical of the claims of the members of the class, and their interests are consistent with and not antagonistic to those of the other class members they seek to represent.  Plaintiffs hold the rights to multiple musical compositions which Rhapsody has reproduced and/or distributed without license and without providing notification to Plaintiffs.  Plaintiffs and all members of the class have sustained actual pecuniary loss and face irreparable harm arising out of Rhapsody's continued infringement as complained of herein.

39.     Plaintiffs have no interests that are adverse to, or which conflict with, the interests of the absent members of the class and are able to fairly and adequately represent and protect the interests of such a class.  Plaintiffs have raised a viable copyright infringement claim of the type reasonably expected to be raised by members of the class, and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate. Plaintiffs are represented by experienced, qualified and competent counsel who are committed to prosecuting this action.

40.     Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, without limitation, the following:

   (A)     Whether Rhapsody engaged in the practice of reproducing, distributing or otherwise exploiting registered musical compositions without first obtaining a mechanical license;

   (B)     Whether Rhapsody failed to comply with the compulsory licensing requirements of the Copyright Act, 17 U.S.C. § 115, including filing of Notices of Intent with the U.S. Copyright Office;

**CLASS ACTION COMPLAINT**

24493

(C)   Whether Rhapsody's reproduction, distribution or other exploitation of registered musical compositions without first obtaining a mechanical license constitutes a violation of the Copyright Act, 17 U.S.C. §§ 106 and 501;

(D)   Whether Rhapsody's unlicensed reproduction, distribution or other exploitation of registered musical compositions was done willfully, thereby entitling the members of the class to increased statutory damages; and

(E)   The basis and method for determining and computing damages.

41.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.  The claims of the individual members of the class may range from smaller sums to larger sums, depending upon the number of Works infringed.  Thus, for those class members with fewer Works infringed, the expense and burden of individual litigation may not justify pursuing the claims individually.  And even if every member of the class could afford to pursue individual litigation—which is highly unlikely in the independent artist community—the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, contradictory, or inconsistent judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  On the other hand, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

24493

## COUNT ONE

### (Direct Copyright Infringement - 17 U.S.C. §§ 106 and 501)

42.    Plaintiffs and the Class reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 41 of the Complaint with the same force and effect as if fully set forth at length herein.

43.    Rhapsody, without license from Plaintiffs and the Class, has made unauthorized reproductions and/or engaged in unauthorized distribution of Plaintiffs' and Class Members' copyrighted musical compositions, including but not limited to, those compositions listed in paragraph 29, *infra*.   Such conduct constitutes infringement of Plaintiffs' and Class Members' registered copyrights in violation of 17 U.S.C. §§ 106, *et seq.* and 501.

44.    The infringement of Plaintiffs' and Class Members' rights in each of their copyrighted compositions constitutes a separate and distinct act of infringement.

45.    Rhapsody's conduct is willful, intentional, purposeful, in disregard of and indifferent to the rights of Plaintiffs and Class Members.

46.    As a direct and proximate result of Rhapsody's willful and infringing conduct, Plaintiffs and Class Members are entitled to the maximum statutory damages or to their actual damages and Defendant's profits, whichever are higher, against Defendant pursuant to 17 U.S.C. § 504(b).  Plaintiffs and Class Members will elect whether or not to seek statutory damages prior to final judgment.  Plaintiffs and Class Members are also entitled to attorney's fees and costs by virtue of Defendant's infringement pursuant to 17 U.S.C. § 505.

47.    Defendant's acts have caused and will continue to cause irreparable harm and injury to Plaintiffs and Class Members for which they have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs and Class Members are therefore entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' and Class Members' copyrights and exclusive rights under United States law.

24493

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all other persons similarly situated, respectfully pray for relief against Defendant as follows:

1.     Certify this matter as a class action;

2.     Enter an order appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

3.     Enter judgment in favor of Plaintiffs and the Class;

4.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class (17 U.S.C. § 502), including enjoining Defendant from continued copyright infringement and violations of the relevant provisions of the Copyright Act;

5.     Enter injunctive relief that requires Rhapsody to pay for the services of a third party auditor to identify the owners of Works reproduced and/or distributed by Rhapsody despite Rhapsody's failure to first obtain a mechanical license prior to reproducing and/or distributing the Works, and further requiring Rhapsody to remove all such Works from its services until it obtains proper licenses for them;

6.     Award compensatory damages to Plaintiffs and the Class in an amount to be ascertained at trial;

7.     Award statutory damages to Plaintiffs and the Class according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

8.     Award reasonable attorneys' fees and costs (17 U.S.C. § 505);

9.     Award Plaintiffs and the Class pre- and post-judgment interest to the extent allowable; and

10.    Award such other and further relief that the Court may deem just and proper.

/ / /

/ / /

**CLASS ACTION COMPLAINT**

24493

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiffs and the Class hereby demand a trial by jury, pursuant to L.R. 3-6.

3

4  Dated:  March 7, 2016                    **MICHELMAN & ROBINSON LLP**

5

6                                          By

7                                             Sanford L. Michelman
                                             Mona Z. Hanna
8                                             David C. Lee
                                             Ilse C. Scott
9                                             Melanie Natasha Howard
                                             *Attorneys for Plaintiffs and Proposed*
10                                            *Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

24493

# EXHIBIT A

×
Rhapsody App for
Rhapsody International, Inc.
Get app
Have the app

Music Apps & Devices Pricing

Join now Sign In
Search for an artist, albu| Cancel

Home / Rhapsody End User Licence Agreement

# Rhapsody End User License Agreement

THIS RHAPSODY END USER LICENSE AGREEMENT ("AGREEMENT") IS A LEGAL AND
BINDING AGREEMENT MADE SOLELY BETWEEN YOU ("YOU" AND "YOUR") AND
RHAPSODY INTERNATIONAL INC. ("RI" "WE," "US," OR "OUR"). BY CLICKING THE
"ACCEPT" BUTTON OR BY INSTALLING, COPYING OR USING THE RI APPLICATION, OR
ANY WEB SITES OWNED OR CONTROLLED BY RI, YOU ARE INDICATING THAT YOU
HAVE READ THIS AGREEMENT, THAT YOU UNDERSTAND IT, AND THAT YOU
CONSENT TO BE BOUND BY ALL OF ITS TERMS AND CONDITIONS. YOU ALSO ACCEPT
THAT ANY THIRD PARTY BENEFICIARY, SUCH AS SAMSUNG, APPLE, OR ANY DEVICE
MANUFACTURERS OR TELECOMMUNICATION SERVICE PROVIDERS, MAY ENFORCE
THE PROVISIONS IN THIS AGREEMENT AND THE TERMS OF USE. THIS AGREEMENT
SETS FORTH YOUR RIGHTS AND OBLIGATIONS WITH RESPECT TO YOUR USE OF ANY
VERSION OF THE DOWNLOADABLE RI SOFTWARE (THE "SOFTWARE") AND ANY
INFORMATION OR DATA OF ANY KIND, INCLUDING WITHOUT LIMITATION ANY
ARTWORK, TEXT, VIDEO, AUDIO, OR PICTURES SERVED THROUGH THE SOFTWARE
OR RECEIVED FROM OR ON ANY WEB SITE OWNED OR CONTROLLED BY RI
(COLLECTIVELY THE "CONTENT") (THE SOFTWARE AND THE CONTENT ARE
TOGETHER REFERRED TO AS THE "APPLICATION"; THE "SOFTWARE" INCLUDES BETA
AND PRE-RELEASE VERSIONS). IF YOU DO NOT AGREE TO THE TERMS OF THIS
AGREEMENT, YOU ARE NOT AUTHORIZED TO USE THE APPLICATION AND YOU MUST
STOP THE REGISTRATION PROCESS AND PROMPTLY CEASE USING AND DESTROY
ANY COPIES OF THE SOFTWARE IN YOUR POSSESSION. FAILURE TO ABIDE BY THE
TERMS OF THIS AGREEMENT MAY RESULT IN TERMINATION OF YOUR ACCESS TO
THE APPLICATION, THE RELATED RI SERVICE, AND/OR ANY PART THEREOF.

# 1. GRANT OF LICENSE

RI hereby grants to you a limited, non-exclusive license to use the Application solely for personal, noncommercial use, on devices under your ownership and control, solely in the United States and other territories in which RI has commercially launched and subject to the following terms:

You may not: (i) frame or link to the Application except as expressly permitted in writing by RI; (ii) permit other individuals to use the Application; (iii) modify, translate, reverse engineer, decompile, disassemble (except to the extent that this restriction is expressly prohibited by law), tamper with, or create derivative works based upon the Application, including the Content, or any portion thereof (including without limitation any watermarks, security components and digital rights management); (iv) copy the Application or any portion thereof; (v) sell, rent, lease, transfer, distribute, broadcast, display or otherwise assign any rights to the Application to any third party; (vi) remove any proprietary notices or labels on the Application; (vii) use the Application in conjunction with any device or service designed to circumvent technological measures employed to control access to, or the rights in, a content file or other work protected by the copyright laws of any jurisdiction; (viii) use the Application for any commercial or illegal purpose; (ix) use the Application for other than your personal, non-commercial purposes, including without limitation the excessive and/or repeated playing of content (for the apparent purpose increasing royalties paid or ratings as applied to such content); (x) use the Application to invade the privacy of, or obtain personal information about, any Application account holder or user, or to obtain a list of Application account holders or users; (xi) copy, modify, erase or damage any information contained on computer servers used or controlled by RI or any third party used in connection with the Application or the services provided through the Application; (xii) use the Application to violate any legal right of any third party, including any publicity or privacy right, copyright or other intellectual property right, or to take any action that is harassing, libelous, defamatory, abusive, tortious, threatening, harmful or otherwise objectionable; or use any data mining, robots, or similar data gathering and or extraction tools in connection with the Application; (xiii) use the Application to post or transmit any unsolicited advertising or promotional materials; (xiv) access or use any password protected, secure or non-public areas of the Application except as specifically authorized in writing by RI (unauthorized individuals attempting to access these areas of the Application may be subject to prosecution); (xv) impersonate or misrepresent your affiliation with any person or entity; (xvi) use any automated means to access or use the Application (including scripts, "bots" or similar software); or (xvii) modify, translate, reverse engineer, decompile, reproduce, disassemble, or otherwise gain access to or attempt to gain access to any private key or "dev key" (as that term is generally understood within the software industry) associated with the Application, the Content or the Services, or to use or attempt to use any private key or "dev key" in a manner in violation of this Agreement or the applicable Rhapsody service Terms and Conditions.

RI uses monitoring procedures designed to prevent individuals from unfairly influencing charts or RI's accounting of plays through the Application and related RI services. RI reserves the right to remove any identified "gaming" plays on the Application or related Services both for royalty accounting and charting purposes.

Violation of any of the foregoing restrictions may result in the termination of your account. RI reserves any and all rights or remedies that may be available in the event of your breach of this Agreement. In the event that you breach this Agreement, and you are (or are acting for the benefit of) a provider of content that appears within the Application, such breach may also result in the removal of such content from the Application and the withholding of royalties related to such content.

Other than as specifically permitted during a free trial period, you may not use any subscription-based features of the Application unless you have paid the applicable subscription fee and agreed to the terms of the Rhapsody Service Terms and Conditions. RI is not obligated to provide any such free trial period.

## 2. UPGRADES

You acknowledge that RI may issue upgraded or modified versions of the Application from time to time, and may automatically electronically upgrade or modify the version of the Application that you are using on your computer. You consent to such automatic upgrading or modification, and agree that this Agreement (as amended from time to time) will govern all such versions.

The Application will operate only on those hardware and software platforms specified in the Application documentation. It is your responsibility to ensure that you have the appropriate software, hardware and Internet connection to operate the then-current version of the Application. RI reserves the right to cease supporting any hardware or software platform at any time, with or without notice.

RI may modify the Application at any time without notice and may discontinue any RI web site at any time without notice.

## 3. TITLE TO INTELLECTUAL PROPERTY

You may not use the Application or the Software for any illegal purpose. RI retains all title and ownership rights in and to the intellectual property. Except as expressly stated in this Agreement, RI does not grant any express or implied right or license to you under any patent, copyright, trademark, or trade secret rights of RI.

## 4. TITLE TO CONTENT SERVED THROUGH THE APPLICATION

The Content served by RI or third parties directly through the Application is the property of RI, its licensors, its partners, and/or its advertisers. Title, ownership rights and intellectual property rights in and to such Content is the property of RI or third parties and is protected by applicable copyright and other law. Other than as expressly provided herein, this Agreement gives you no express or implied license to the Content, including without limitation, any right to use, sell, rent, copy, distribute, broadcast, modify, perform or publicly display any Content.

RI complies with copyright law and expects its users to do the same. You may not use the Application to help you infringe the copyrights of any third party. Unauthorized use, copying, distribution, modification, public display, or public performance of copyrighted works is an infringement of the copyright holders' rights and a violation of the law. You agree that you shall only use the Application in a manner that does not violate any third-party rights and that complies with all applicable laws in the jurisdiction in which you use the Application, including, but not limited to, applicable restrictions concerning copyrights and other intellectual property rights. In the event of any third party claim that your use of the Application infringes any third party's intellectual property rights, you will be solely responsible for the investigation, defense, settlement and discharge of any such claim.

# 5. LINKED ENTITIES

The Application and service may contain links to various third party web sites, advertisements and other resources ("Linked Entities"). These Linked Entities (other than web properties owned or operated by RI such as www.rhapsody.com) are not under the control of RI and RI is not responsible or liable for the content, communications or materials of any Linked Entities. The inclusion of any link does not imply endorsement by RI of the Linked Entity or any association with its operators. You are responsible for adhering to the applicable terms of service for any Linked Entity. You are solely responsible and liable for any interactions you may have with such entities, advertisers, their sponsors and other third parties.

# 6. REGISTRATION

You agree to provide true, accurate, current and complete information about yourself as prompted by the registration process (such information being the "Account Information"). You agree to update your Account Information in order to keep such information current. You are solely and entirely responsible for maintaining the confidentiality of your password and user name. Furthermore, you are solely and entirely responsible for any and all activities that occur under your account.

# 7. BETA RELEASE OR PRE-RELEASE VERSIONS

In the event that the Software is a beta release or pre-release version, the terms of this Section shall apply. Your license to use the Software expires 120 days after installation (or such other period as indicated by the Software) and the Software may cease to function. The Software you are receiving may contain more or less features than the commercial release of the Software we intend to distribute. While we intend to distribute a commercial release of the Software, we reserve the right at any time not to release a commercial release of the Software or, if released, to alter features, specifications, capabilities, functions, licensing terms, release dates, general availability or other characteristics of the commercial release. You agree that the beta release or pre-release versions are not suitable for production use and may contain errors affecting their proper operation. You agree that you will not do anything to circumvent or defeat the features designed to stop the Software from operating after the license expires.

# 8. DISCLAIMER OF WARRANTY

THE APPLICATION IS PROVIDED "AS IS" AND "AS AVAILABLE" WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE APPLICATION OR ITS OPERATION. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, RI, ITS PARENT COMPANY OR COMPANIES, ITS LICENSORS, ITS INVESTORS, AND ITS DISTRIBUTION AND SYNDICATION PARTNERS, THE WIRELESS CARRIERS OVER WHOSE NETWORK THE APPLICATION IS PROVIDED, AND ITS RESEPECTIVE AFFILIATES AND SUBSCRIBERS, AND ALL DEVICE MANUFACTURERS, SUCH AS APPLE INC., ON WHICH THE APPLICATION MAY BE USED, (THE "RI ENTITIES") DISCLAIM ALL WARRANTIES, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT.

USE OF THE APPLICATION IS AT YOUR OWN RISK. THE RI ENTITIES MAKE NO WARRANTY THAT THE APPLICATION WILL MEET YOUR REQUIREMENTS, OR THAT THE APPLICATION WILL BE UNINTERRUPTED, TIMELY, SECURE, FREE OF VIRUSES, OR ERROR FREE; NOR DO THE RI ENTITES MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM THE APPLICATION OR AS TO THE ACCURACY OR RELIABILITY OF ANY CONTENT OBTAINED THROUGH THE APPLICATION. THE RI ENTITIES MAKE NO WARRANTY REGARDING ANY GOODS OR SERVICES PURCHASED OR OBTAINED THROUGH THE APPLICATION OR ANY TRANSACTIONS ENTERED INTO THROUGH THE APPLICATION.

# 9. LIMITATION OF LIABILITY

ANY AND ALL RISK ARISING OUT OF THE USE AND/OR PERFORMANCE OF THE APPLICATION REMAINS WITH YOU. IN NO EVENT SHALL THE RI ENTITIES OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR AFFILIATES, INCLUDING ANY DEVICE MANUFACTURERS OR TELECOMMUNICATION SERVICE PROVIDERS, BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE, OR OTHER DAMAGES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SALE, DISTRIBUTION, PERFORMANCE OR NON-PERFORMANCE, USE OF, OR INABILITY TO USE THE APPLICATION OR ANY PART THEREOF, EVEN IF RI HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. BECAUSE SOME STATES/JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU, BUT THEY SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY LAW. IN NO EVENT SHALL THE RI ENTITIES BE LIABLE FOR ANY CLAIMS (INCLUDING, WITHOUT LIMITATION, CLAIMS FOR BREACH OF CONTRACT, BREACH OF WARRANTY, GUARANTEE OR CONDITION, STRICT LIABILITY, NEGLIGENCE OR OTHER TORT) OR DAMAGES IN EXCESS OF THE AMOUNT PAID FOR THE APPLICATION OR THE SPECIFIC ITEM OF CONTENT GIVING RISE TO THE APPLICABLE CLAIM FOR DAMAGES.

THE OWNERS AND LICENSORS OF THE CONTENT, SAMSUNG, APPLE AND APPLE'S SUBSIDIARIES, AND ANY ANY DEVICE MANUFACTURERS OR TELECOMMUNICATION SERVICE PROVIDERS ARE INTENDED THIRD-PARTY BENEFICIARIES OF THIS AGREEMENT, AND SHALL HAVE THE RIGHT TO ENFORCE THIS AGREEMENT AGAINST YOU.

# 10. USER SUPPLIED MATERIALS

All information, advice, files, links, communications or other materials posted by you to or through the Application ("User-Supplied Materials") shall be your responsibility. You agree not to post or transmit any User-Supplied Materials that infringe a third party's rights, including without limitation any privacy, publicity or intellectual property rights, or that are unlawful, untrue harassing, libelous, defamatory, abusive, tortious, threatening, harmful (including but not limited to viruses, worms or similar software) or that is otherwise objectionable. You grant, or warrant that the owner of such User-Supplied Materials has expressly granted RI, the royalty-free, perpetual, irrevocable, fully sub-

licensable, non-exclusive right and license to use, reproduce, display, modify, transmit, distribute, perform, display and delete such User-Supplied Materials (in whole or in part) worldwide and or/ to incorporate such User-Supplied Materials in other works in any form, media or technology now known or later developed. User-Supplied materials are public and not private communications.

## 11. USER-SUPPLIED MATERIALS AND MONITORING

RI shall have the right, but not the responsibility, to monitor and/or remove User-Supplied Materials deemed harmful or offensive in RI's sole discretion, or that otherwise violate this Agreement or any rules that RI may institute from time to time. RI shall have no liability for the failure to receive or for the removal of any User-Supplied Materials. Any opinions, advice, statements, services, offers or other information or content expressed or made available by third parties, are those of the respective author(s) or distributor(s) and not of RI. RI neither endorses nor is responsible for the accuracy or reliability of any opinion, advice, information, or statement made on or in connection with the Application by anyone other than authorized RI employees acting in their official capacities.

## 12. INDEMNITY

You agree to indemnify and hold RI and its parents, members, subsidiaries, affiliates, service providers, syndicators, distributors, licensors, officers, directors and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to, or arising out of or related to your violation of this Agreement, or your violation of any law, regulation or third-party right.

## 13. TERMINATION

This Agreement (and your license) shall terminate automatically and immediately if you fail to comply with any of the limitations described in this Agreement. No notice shall be required from RI to effectuate such termination. In addition, RI reserves the right to terminate this Agreement and discontinue your access to the Application at any time for any reason, and with or without notice. Upon termination of this Agreement for any reason you must immediately destroy all copies of the Application.

## 14. CUSTOMER SERVICE

If you have any questions or concerns about your account, please contact Customer Service or via mail to:

Rhapsody International Inc.
Attn: Customer Service
1420 5th Avenue, Suite 1500
Seattle, WA 98101

Your phone manufacturer, such as Microsoft or Apple, or your network operator shall not provide support services for the Application.

## 15. MODIFICATION

RI may modify this Agreement at any time in its sole discretion. In the event of a material change to this Agreement we will use reasonable efforts to notify you by sending notice to the email address that you have provided to us. If any modification is unacceptable to you, you agree that your only recourse is to immediately terminate your use of the Application and destroy any copies of the Software in your possession. Your continued use of the Application following our release of a revised End User License Agreement on the Application will constitute your binding acceptance of the change. YOUR ACCEPTANCE OF THIS AGREEMENT INDICATES THAT YOU GIVE CONSENT TO RI TO E-MAIL YOU WITH NOTICES CONCERNING MATERIAL CHANGES IN THE TERMS OF THIS AGREEMENT, THE APPLICATION OR THE SERVICES TO WHICH YOU HAVE SUBSCRIBED.

## 16. U.S. GOVERNMENT RESTRICTED RIGHTS AND EXPORT RESTRICTIONS

The Application is provided with restricted rights. Use, duplication or disclosure by the Government is subject to restrictions as set forth in subparagraph (c)(1)(ii) of The Rights in Technical Data and Computer Software clause of DFARS 252.227-7013 or subparagraphs (c)(i) and (2) of the Commercial Computer Software-Restricted Rights at 48 CFR 52.227-19, as applicable. Manufacturer of Application is RealNetworks Digital Music of California, Inc. and/or RI, each with an address at 500 3rd St #460, San Francisco, CA 94107. You acknowledge that none of the Application may be downloaded or otherwise exported or re-exported (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Serbia (except Kosovo), Sudan, Syria, or any other country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Denied Parties List or Entity List. By using the Application you are agreeing to the foregoing and are representing and warranting that you are not located in, under the control of, or a national or resident of, any such country or on any such list.

## 17. GOVERNING LAW

This Agreement shall be governed by the laws of the State of California, United States of America, without regard to or application of any choice of law or conflict of laws provisions. You consent to the exclusive jurisdiction of the state and federal courts sitting in San Francisco, in the State of California. This Agreement will not be governed by the United Nations Convention of Contracts for the International Sale of Goods, the application of which is hereby expressly excluded. If either RI or you employ any attorneys to enforce any rights arising out of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

## 18. GENERAL

No delay or failure to take action under this Agreement shall constitute any waiver by RI of any provision of this Agreement. This Agreement (including all documents expressly incorporated by reference) constitutes the complete and exclusive agreement between RI and you with respect to the subject matter hereof and supersedes all prior oral or written understandings, communications or agreements not specifically incorporated herein. If any provision of this Agreement is invalid or

unenforceable under applicable law, it is, to that extent, deemed omitted and the remaining provisions will continue in full force and effect. This Agreement will bind and inure to the benefit of each party's permitted successors and assigns. This Agreement is personal to you and may not be transferred, assigned or delegated to anyone. Any attempt by you to assign, transfer or delegate this Agreement shall be null and void.

# 19. GRACENOTE® END USER LICENSE AGREEMENT

This application or device contains software from Gracenote, Inc. of Emeryville, California ("Gracenote"). The software from Gracenote (the "Gracenote Software") enables this application to perform disc and/or file identification and obtain music-related information, including name, artist, track, and title information ("Gracenote Data") from online servers or embedded databases (collectively, "Gracenote Servers") and to perform other functions. You may use Gracenote Data only by means of the intended End-User functions of this application or device.

This application or device may contain content belonging to Gracenote's providers. If so, all of the restrictions set forth herein with respect to Gracenote Data shall also apply to such content and such content providers shall be entitled to all of the benefits and protections set forth herein that are available to Gracenote.

You agree that you will use Gracenote Data, the Gracenote Software, and Gracenote Servers for your own personal non-commercial use only. You agree not to assign, copy, transfer or transmit the Gracenote Software or any Gracenote Data to any third party. YOU AGREE NOT TO USE OR EXPLOIT GRACENOTE DATA, THE GRACENOTE SOFTWARE, OR GRACENOTE SERVERS, EXCEPT AS EXPRESSLY PERMITTED HEREIN.

You agree that your non-exclusive license to use the Gracenote Data, the Gracenote Software, and Gracenote Servers will terminate if you violate these restrictions. If your license terminates, you agree to cease any and all use of the Gracenote Data, the Gracenote Software, and Gracenote Servers. Gracenote reserves all rights in Gracenote Data, the Gracenote Software, and the Gracenote Servers, including all ownership rights. Under no circumstances will Gracenote become liable for any payment to you for any information that you provide. You agree that Gracenote, Inc. may enforce its rights under this Agreement against you directly in its own name.

The Gracenote service uses a unique identifier to track queries for statistical purposes. The purpose of a randomly assigned numeric identifier is to allow the Gracenote service to count queries without knowing anything about who you are. For more information, see the web page for the Gracenote Privacy Policy for the Gracenote service.

The Gracenote Software and each item of Gracenote Data are licensed to you "AS IS." Gracenote makes no representations or warranties, express or implied, regarding the accuracy of any Gracenote Data from in the Gracenote Servers. Gracenote reserves the right to delete data from the Gracenote Servers or to change data categories for any cause that Gracenote deems sufficient. No warranty is made that the Gracenote Software or Gracenote Servers are error-free or that functioning of Gracenote Software or Gracenote Servers will be uninterrupted. Gracenote is not obligated to provide you with new enhanced or additional data types or categories that Gracenote may provide in the future and is free to discontinue its services at any time.

GRACENOTE DISCLAIMS ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. GRACENOTE DOES NOT WARRANT THE RESULTS THAT WILL BE OBTAINED BY YOUR USE OF THE GRACENOTE SOFTWARE OR ANY GRACENOTE SERVER. IN NO CASE WILL GRACENOTE BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OR FOR ANY LOST PROFITS OR LOST REVENUES.

© 2011. Gracenote, Inc. All Rights Reserved.

Certain features or services provided by Rhapsody may be covered by U.S. Patents including U.S. Patent No. 6,330,592.

NOTE: Rhapsody® is a trademark of RI.

Last modified: November 21, 2013

© 2016 Rhapsody International, Inc.

Terms of Use | Privacy Policy | End User Agreement

Language  English

**Rhapsody**

- Music
- Apps & Devices
- Blog
- Pricing

**About Us**

- Company Info
- Careers
- Press & Media
- Partners

**Resources**

- Account
- Customer Support
- Redeem Coupon
- Buy a Gift

**Legal**

- Terms of Use

- <u>Privacy Policy</u>
- <u>End User Agreement</u>



-
-
-
-
-

Language [English ▾]

© 2016 Rhapsody International Inc. All rights reserved. Rhapsody and the Rhapsody logo are registered trademarks of Rhapsody International Inc.

[Search for music] <u>X</u>

# EXHIBIT B

Join now Sign In

x

- Music
- Apps & Devices
- Pricing

- Search

- Company Info
- Careers
- Press & Media
- Partners
- Account
- Customer Support
- Redeem Coupon
- Buy a Gift



© 2016 Rhapsody International Inc.



Rhapsody App for
Rhapsody International, Inc.
Get app
Have the app

Music Apps & Devices Pricing

Join now Sign In

Search for an artist, albu Cancel

Home

# Apps & Devices

## On your mobile device

Stream millions of songs or download unlimited playlists and songs straight to your phone or tablet and never miss a beat.

Get the app:



Apps & Devices for Rhapsody - Music Anywhere





## On your computer

Go to Rhapsody.com on any computer or download our PC software to play music, build playlists and discover new artists.

Sign in on Rhapsody.com »
Download Windows software »







### In your living room

Fill every room in your home with music, build the perfect playlist for your next dinner party, and be your own DJ. Play directly from your Wii U™ Console, Sonos app, or connect to your home audio device using AirPlay and Chromecast.



© 2016 Rhapsody International, Inc.

Terms of Use | Privacy Policy | End User Agreement

Language [English ▾]

**Rhapsody**

- Music
- Apps & Devices
- Blog
- Pricing

**About Us**

- Company Info
- Careers
- Press & Media
- Partners

**Resources**

- Account
- Customer Support
- Redeem Coupon
- Buy a Gift

**Legal**

- Terms of Use
- Privacy Policy
- End User Agreement



- 
- 
- 
- 
- 

Language [English ▾]

© 2016 Rhapsody International Inc. All rights reserved. Rhapsody and the Rhapsody logo are registered trademarks of Rhapsody International Inc.

[Search for music] X

# EXHIBIT C



(http://news.rhapsody.com/)

**BY RHAPSODY TEAM
(HTTP://NEWS.RHAPSODY.COM/AUTHOR/USWSTEAM/)  /  JULY 29,
2014**

# RHAPSODY INTERNATIONAL REACHES TWO MILLION SUBSCRIBERS FOR ITS PREMIUM MUSIC SERVICES: RHAPSODY, NAPSTER & UNRADIO




*i*

Today, we announced that Rhapsody International has more than two million paying subscribers globally for its premium music services, including Napster, Rhapsody and its recently launched Internet radio service, Rhapsody unRadio. This is a significant milestone for Rhapsody International and the music subscription model it has championed since 2001.

Rhapsody International also announced it will extend Napster's presence in Europe and in Latin America through expanded partnerships with two of the world's largest mobile telecommunications companies, SFR and Telefonica, to make Napster-branded music services available to those companies' mobile customers.

Last month, Rhapsody launched a breakthrough new Internet radio service, Rhapsody unRadio, in partnership with United States mobile operator T-Mobile. With unRadio, listeners can skip an unlimited number of songs, listen without annoying and intrusive advertisements, and when they hear a song they love, they can mark it as a favorite and automatically save it for later listening – even when they're offline.

Now, Rhapsody's Napster division and SFR, France's second largest mobile operator, are bringing this radio service to Europe for the first time. SFR and Napster are making this service available to users in France under the Napster brand, as Napster Decouverte (Napster Discovery).

Napster Decouverte, which is available now for €3.95 (3.95 Euros) per month, will be marketed alongside the Napster Premier service that SFR and Rhapsody launched last fall, giving French music fans two great ways to discover and enjoy music through Napster.

In Latin America, Napster and Telefonica have launched and are actively promoting the Napster Premier service in several new countries, including Argentina, Chile and Uruguay. These commercial launches are the result of a strategic agreement Rhapsody and Telefonica announced last fall, through which select Telefonica operating businesses in Europe and Latin America will deliver the Napster Premier music service to mobile and fixed line customers.

"Today is a day to thank the Rhapsody and Napster members around the world whose passion and insane love of music motivate us every day," said Paul Springer, senior vice president, for the Americas and chief product officer of Rhapsody International. "Our recently launched radio service underscores our commitment to giving mobile music fans even more ways to discover and download great music. We're excited to build on our U.S. momentum by launching this service in Europe, in partnership with SFR."

Rhapsody and Napster users are highly engaged with the service and its global catalog of more than 32 million tracks, with more than 80% of listening happening on mobile. Over the past three months, the songs, albums and artists most popular with Rhapsody and Napster members included:

**Most popular songs:**

- Global – "Happy" by Pharrell Williams

- United States – "Fancy" by Iggy Azalea featuring Charli XCX

- Latin America – "Happy" by Pharrell Williams

- Europe – "Rather Be" by Clean Bandit feat. Jess Glyne

**Most popular albums:**

- Global – "G I R L" by Pharrell Williams

- United States – "Nothing was the Same" by Drake

- Latin America – "Live in London – At the Royal Albert Hall" by Julio Iglesias

- Europe – "Frozen" by Various Artists

**Most popular artists:**

- Global – Michael Jackson

- United States – Eminem

- Latin America  – Jorge & Mateus

- Europe – Coldplay

Check back soon to get the latest updates on Rhapsody and Napster.

# EXHIBIT D



**(http://news.rhapsody.com/)**

BY RHAPSODY TEAM
(HTTP://NEWS.RHAPSODY.COM/AUTHOR/USWSTEAM/) / JULY 22, 2015

# 3M REASONS TO CELEBRATE



> *Go 0 to 3 Million Real Quick"*

"**I** Today, we're celebrating more than three million music lovers listening on Rhapsody and Napster across the world. What a difference a year makes. The past 12 months have been the fastest growth period in our 13-year history. Last summer,

we celebrated hitting two million subscribers, and now, in under a year, we've increased our subscriber base by 50 percent.

This is not without some extreme change in our industry. The entrance of new competitors makes us even more confident that we were onto something when we built the first streaming music service back in 2001.

While we're proud of what we started, we're not stopping. Our growth continues to be fueled by mobile listening and expansion in emerging markets. Some of the things we're most proud of:

- **Mobile is (still) king:** Mobile users are up 60 percent from this time last year.

- **Piracy markets are evolving:** We've had tremendous success in countries where the level of piracy has traditionally been high. We've added 100,000 new customers in Italy, which has been a hotbed for piracy. And Colombia and Brazil are our fastest growing markets, where poor internet connectivity is a key factor behind elevated music piracy rates.

- **The Twittersphere is hungry for music:** In March, we became the first music service to bring fully-licensed music to Twitter with Audio Cards. Artists love Rhapsody Audio Cards as a new way to bring music to their fans. Wiz Khalifa, Mariah Carey, and Fifth Harmony have shared audio cards, and even Wale used a Rhapsody Audio Card to premiere a new song to the world.

- **Our members are data smart:** As we've watched our members increasingly go mobile, we know that there's a potential impact on your data usage. To make sure you can stay data smart, we made the offline button more

visible and you've noticed. Offline listening surged by almost 40 percent over the last six months.

- **Music Inbox:** This summer, we introduced a weekly music concierge to match your listening history and favorite artists with new music each week. To date we have delivered over one million personalized music recommendations directly to Rhapsody subscribers.

One of the things that we're most proud of at Rhapsody and Napster is we're building a service that's personalized for you – not one that tells you what you should like. In addition to our new Music Inbox feature that rolled out this summer, we continue to bring the most complete catalog of music to fans in every country where we offer our service. Listeners in France listen to significantly more music from local artists than global superstars, so we make sure that the catalog for Napster in France is as deep as our members need.

That's led us to see some interesting trends across how our members listen and the differences in our global base of three million music lovers:

- Rap and Hip-Hop remain top genres in the US, while pop is king in Germany, UK and Brazil.

- The top three artists in the US are Drake, Eminem, and Nicki Minaj, while David Guetta is among the most popular artists in Germany and Brazil.

- Global members are streaming more Rap and Hip-Hop than any other genre; Electronica and Dance are close behind with the second-fastest growth.

- Although you listen differently based on where you live, Drake is the most popular artist, uniting fans globally.

While we're taking a moment to celebrate and say thanks to our amazing members – know that we're not done. Our teams across the world – from Seattle to Frankfurt to Sao Paolo – are hard at work on some exciting updates to the Rhapsody and Napster experience that we can't wait to show you. Just know that we'll continue to bring you the most personalized music experience.

# EXHIBIT E



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = almond grove
Search Results: Displaying 1 of 1 entries



*Almond Grove.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PAu003764032 / 2015-01-22 |
| **Application Title:** | Almond Grove. |
| **Title:** | Almond Grove. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | David Charles Lowery. Address: 5911 w broad st, richmond, VA, 23230, United States. |
| **Date of Creation:** | 2014 |
| **Authorship on Application:** | David Charles Lowery; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| **Rights and Permissions:** | velena m vego, Po Box 655, Athens, GA, 30603, United States, (706) 549-2740, velenavego@gmail.com |
| **Copyright Note:** | C.O. correspondence. |
| **Names:** | Lowery, David Charles |



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format | Full Record ▼ | Format for Print/Save |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = get on down the road
Search Results: Displaying 3 of 18 entries



*Get On Down The Road.*

**Type of Work:** Music

**Registration Number / Date:** PAu003745342 / 2014-10-17

**Application Title:** Get On Down The Road.

**Title:** Get On Down The Road.

**Description:** Electronic file (eService)

**Copyright Claimant:** David C Lowery. Address: 5911 W. Broad St, Richmond, VA, 23230, United States.

**Date of Creation:** 2013

**Authorship on Application:** David Charles Lowery, 1960- ; Domicile: United States; Citizenship: United States. Authorship: music, lyrics.

**Rights and Permissions:** Velena M Vego, PO Box 655, Athens, GA, 30603, United States, (706) 549-2740, velenavego@gmail.com

**Names:** Lowery, David Charles, 1960-



| Save, Print and Email (Help Page) |
|---|
| Select Download Format Full Record ▾  Format for Print/Save |
| Enter your email address: [                    ] Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page



Help   Search   History   Titles   Start Over

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = king of bakersfield
Search Results: Displaying 1 of 1 entries





*King Of Bakersfield.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PAu003745341 / 2014-10-17 |
| **Application Title:** | King Of Bakersfield. |
| **Title:** | King Of Bakersfield. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | David C Lowery. Address: 5911 W. Broad St, Richmond, VA, 23230, United States. |
| **Date of Creation:** | 2013 |
| **Authorship on Application:** | David Charles Lowery, 1960- ; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| **Rights and Permissions:** | Velena M Vego, PO Box 655, Athens, GA, 30603, United States, (706) 549-2740, velenavego@gmail.com |
| **Names:** | Lowery, David Charles, 1960- |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = tonight i cross the border
Search Results: Displaying 1 of 1 entries



*Tonight I Cross The Border.*

**Type of Work:** Music
**Registration Number / Date:** PAu003745338 / 2014-10-17
**Application Title:** Tonight I Cross The Border.
**Title:** Tonight I Cross The Border.
**Description:** Electronic file (eService)
**Copyright Claimant:** David C Lowery. Address: 5911 W. Broad St, Richmond, VA, 23230, United States.
**Date of Creation:** 2014
**Authorship on Application:** David Charles Lowery, 1960- ; Domicile: United States; Citizenship: United States. Authorship: music, lyrics.
**Rights and Permissions:** Velena M Vego, PO Box 655, Athens, GA, 30603, United States, (706) 549-2740, velenavego@gmail.com
**Names:** Lowery, David Charles, 1960-



| Save, Print and Email (Help Page) |
| --- |
| Select Download Format  Full Record ▾   Format for Print/Save |
| Enter your email address: [                ]  Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page



| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = sugartown
Search Results: Displaying 5 of 39 entries

◄ previous    next ►



### *El Camino Real.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0001919183 / 2014-07-06 |
| **Application Title:** | El Camino Real. |
| **Title:** | El Camino Real. |
| **Description:** | Compact disc. |
| **Copyright Claimant:** | Camper Van Beethoven, Transfer: By written agreement. Address: 5911 W. Broad Street, Richmond, VA, 23230. |
| **Date of Creation:** | 2014 |
| **Date of Publication:** | 2014-06-03 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | David C Lowery; Citizenship: United States. Authorship: music, lyrics. Victor H Krummenacher; Citizenship: United States. Authorship: music, lyrics. Greg Alan Lisher; Citizenship: United States. Authorship: music, lyrics. Jonathan Ehren Segel; Citizenship: United States. Authorship: music, lyrics. |
| **Rights and Permissions:** | Velena Vego, velenavego@gmail.com |
| **Copyright Note:** | C.O. correspondence. |
| **Contents:** | The Ultimate Solution. It Was Like That When We Got Here. Classy Dames and Able Gents. Camp Pendleton. Dockweiler Beach. Sugartown. I Live In LA. Out Like A Lion. Goldbase. Darken Your Door. Grasshopper. |
| **Names:** | Lowery, David C Krummenacher, Victor H Lisher, Greg Alan |

Segel, Jonathan Ehren
Camper Van Beethoven

[ ◄ previous ]   [ next ► ]

| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format | Full Record ⌄ | Format for Print/Save |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page





# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = you got yourself into this
Search Results: Displaying 1 of 1 entries

◀ previous    next ▶

**Labeled View**

*You Got Yourself Into This.*

|  |  |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PAu003745326 / 2014-10-16 |
| **Application Title:** | You Got Yourself Into This. |
| **Title:** | You Got Yourself Into This. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | David C Lowery. Address: 5911 W. Broad St, Richmond, VA, 23230, United States. |
| **Date of Creation:** | 2014 |
| **Authorship on Application:** | David Charles Lowery, 1960- ; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
|  | John Arthur Hickman, 1956- ; Domicile: United States; Citizenship: United States. Authorship: music. |
|  | David Allen Faragher; Domicile: United States; Citizenship: United States. Authorship: music. |
|  | Michael Urbano; Domicile: United States; Citizenship: United States. Authorship: music. |
| **Rights and Permissions:** | Velena M Vego, PO Box 655, Athens, GA, 30603, United States, (706) 549-2740, velenavego@gmail.com |
| **Names:** | Lowery, David Charles, 1960- |
|  | Hickman, John Arthur, 1956- |
|  | Faragher, David Allen |
|  | Urbano, Michael |

◀ previous    next ▶





| **Save, Print and Email (Help Page)** | |
|---|---|
| Select Download Format  Full Record ▾ | Format for Print/Save |
| Enter your email address: | Email |

Help   Search   History   Titles   Start Over

# EXHIBIT F



**Ⓒopyright**
United States Copyright Office

# Compulsory License for Making and Distributing Phonorecords

Section 115 of the Copyright Act provides a compulsory license to make and distribute phonorecords once a phonorecord of a work has been distributed to the public in the United States under authority of the copyright owner, subject to certain terms and conditions of use. Such a license includes the right of the compulsory licensee to make and distribute, or to authorize the making and distribution of, a phonorecord of a nondramatic musical work by means of a digital transmission, which constitutes a digital phonorecord delivery. The Copyright Office's regulations set out in detail the procedures that must be followed to operate under a compulsory license. See sections 201.18 and 210 of title 37 of the *Code of Federal Regulations.*

### Frequently Asked Questions

The Licensing Division often receives questions about the following points regarding the section 115 compulsory license.

#### What Is a Phonorecord?

The statute defines phonorecords as "material objects in which sounds, *other than those accompanying a motion picture or other audiovisual work, are fixed.*" (See **section 101** of the copyright law.) Since the compulsory license applies only to the making and distributing of phonorecords, and soundtracks are not phonorecords, the compulsory license is not available to those who want to record a soundtrack.

#### What Is a Digital Phonorecord Delivery?

The term *digital phonorecord delivery,* or DPD, is defined, in part, as each individual delivery of a phonorecord by digital transmission of a sound recording that results in a specifically identifiable reproduction by or for any transmission recipient of a phonorecord of that sound recording. A digital phonorecord delivery includes all phonorecords that are made for the purpose of making the digital phonorecord delivery. (See section 210 of title 37 of the *Code of Federal Regulations.*)

#### Must One Use a Compulsory License?

No. Anyone wishing to make and distribute phonorecords of a nondramatic musical work can negotiate directly with the copyright owner or his or her agent. But if the copyright owner is unwilling to negotiate, or if the copyright

owner cannot be contacted, the person intending to record the work or make a DPD can use the compulsory licensing provisions of the copyright law.

### When Can One Obtain a Compulsory License?

A compulsory license is available to anyone as soon as "phonorecords of a nondramatic musical work have been distributed to the public in the *United States and its territories* under the authority of the copyright owner."

**NOTE:** For the purpose of computing royalties, a phonorecord will generally be considered "voluntarily distributed" if the compulsory licensee has voluntarily and permanently parted with possession of the phonorecord. A digital phonorecord delivery will be treated as having been voluntarily distributed and relinquished from possession, and a compulsory licensee will be treated as having permanently parted with possession of a digital phonorecord delivery, on the date the phonorecord is digitally transmitted.

### Does a Compulsory License Also Cover Making and Reproducing a Sound Recording?

No. Section 115 does not cover sound recordings. Rather, it covers the reproduction and distribution of musical compositions. It is important to note that there are two separate components of a musical work: the musical composition and the sound recording. A musical composition consists of music, including any accompanying words. The author of a musical composition is generally the composer and the lyricist, if there are lyrics. A musical composition can be in the form of a notated copy (for example, sheet music); a phonorecord (for example, cassette tape, LP, or CD); or a DPD. A sound recording, on the other hand, results from the fixation of a series of musical, spoken, or other sounds. The author of a sound recording is the performer(s) whose performance is fixed, the record producer who processes the sounds and fixes them in the final recording, or both. Copyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition. A separate license must be obtained from the copyright owner of the sound recording before a musical work can be used.

### Under What Conditions Can One Obtain a Compulsory License?

A compulsory license can be obtained only if the primary purpose in making the phonorecords is to *distribute them to the public for private use*. It is not available for phonorecords intended for use in background music systems, jukeboxes, broadcasting, or any other public use.

### Can One Make a New Arrangement of the Copyrighted Musical Work for the Recording?

Yes. The compulsory license includes the privilege of making a musical arrangement of the work to the "extent necessary to conform it to the style or manner of interpretation of the performance involved." However, section 115 also provides that the arrangement "shall not change the basic melody or fundamental character of the work, and shall not be subject to protection as a derivative work … except with the express consent of the copyright owner."

## Steps to Obtain a Compulsory License

The first step is to identify the copyright owner of the nondramatic musical work. This can be done by either personally searching the records of the Copyright Office or asking the Copyright Office to conduct a search. For details about searching Copyright Office files, see Circular 22, *How to Investigate the Copyright Status of a Work*, and Circular 75, *The Licensing Division of the Copyright Office*. These circulars are available on the Copyright Office website at www.copyright.gov.

The second step in obtaining a compulsory license depends on the findings of the search for a copyright owner.

### If the Name and Address of the Copyright Owner Are Known

1 Before or within 30 days of making, and before distributing, any phonorecords of the work, serve a Notice of Intention to Obtain a Compulsory License on the copyright owner or authorized agent of the owner. There is no need to file a copy of the notice in the Copyright Office.

   **NOTE:** A notice of intention can designate any number of nondramatic musical works, provided that the copyright owner of each designated work is the same or, in the case of any work having more than one copyright owner, any one of the copyright owners is the same and provided that certain other information required in the notice does not vary. (See section 201.18 of title 37 of the *Code of Federal Regulations* for more information and regulations.)

2 Make royalty payments, accompanied by a monthly statement of account, to the copyright owner or authorized agent of the owner on or before the 20th day of each month for every phonorecord made and distributed in accordance with the license.

3  File with the copyright owner or authorized agent of the owner a detailed annual statement of account, certified by a certified public accountant.

### If the Owner Is No Longer at the Address or Refuses to Accept Delivery

If the Notice of Intention to Obtain a Compulsory License is sent by mail or reputable courier service to the last address for the copyright owner shown in the records of the Copyright Office, or to an updated address otherwise identified, and the notice is returned to the sender because the copyright owner is no longer located at the address or has refused to accept delivery, file the original notice as sent in the Licensing Division of the Copyright Office. Include a brief statement specifying that the notice was sent to the last address identified for the copyright owner but was returned; appropriate evidence that it was mailed to that address may be submitted. No filing fee is required for notices filed under these circumstances. (See section 201.18 of title 37 of the *Code of Federal Regulations* for more information and regulations.)

The Licensing Division will acknowledge receipt of the filing.

### If the Name and Address of the Copyright Owner Are Not Known

1  File a Notice of Intention to Obtain a Compulsory License in the Licensing Division of the Copyright Office (see the address at the end of this section).

2  Submit the statutory filing fee for each title listed in the notice in a single payment. (See sl 4L, *Copyright Office Licensing Division Service Fees*, available on the Copyright Office website.) The Licensing Division will acknowledge receipt of the filing. However, if certification of a document is required, see **Circular 6**, *Obtaining Access to and Copies of Copyright Office Records and Deposits*, for information and associated fees.

3  Make checks payable to *Register of Copyrights* or authorize deduction from a deposit account for the filing fee. (See **Circular 5**, *How to Open and Maintain a Copyright Office Deposit Account*.)

**IMPORTANT:** The name and address of the copyright owner may be known or appear in the records of the Copyright Office at a later time. Since royalty payments must be made after the copyright owner is identified, the licensee should periodically search these records to ascertain if the copyright owner has been identified. *If* and *after* the copyright owner is identified, the licensee should make royalty payments for phonorecords made and distributed directly to the copyright owner or authorized agent of the owner. Do not send royalty payments to the Copyright Office.

The Copyright Office does not provide forms for the Notice of Intention to Obtain a Compulsory License, the monthly statement of account, or the annual statement of account. For detailed instructions about the content of the notice of intention and statements of accounts, see sections 201.18 and 201.19 of title 37 of the *Code of Federal Regulations* or contact the Licensing Division of the Copyright Office:

> *Copyright Royalty Board*
> *Attn: Licensing Division*
> *P.O. Box 70977*
> *Washington, DC 20024-0977*
>
> TEL: (202) 707-8150
> FAX: (202) 707-0905
> EMAIL: licensing@loc.gov
> WEB: www.copyright.gov/licensing

Licensing Division staff members are available to answer questions between 8:30 AM and 5:00 PM, eastern time, Monday through Friday, except federal holidays. The Licensing Division is in the James Madison Memorial Building of the Library of Congress, located on Capitol Hill between First and Second Streets, SE, Washington, D.C.

## What Are the Current Royalty Rates for Using the Compulsory License?

For current copyright royalty rates under the compulsory license for making and distributing phonorecords, see *Mechanical Copyright Royalty Rates* at www.copyright.gov/licensing/m200a.pdf or contact the Licensing Division of the Copyright Office.

## Rate-Setting Proceedings

The Copyright Royalty Board, created under the Copyright Royalty and Distribution Reform Act of 2004, sets the rates and terms for use of the compulsory licenses in accordance with copyright law. For information about rate setting, write to the Copyright Royalty Board at P.O. Box 70977, Washington, DC 20024-0977; call (202) 707-7658; or visit www.loc.gov/crb.

Compulsory License for Making and Distributing Phonorecords  ·  4

**U.S. Copyright Office**  ·  **Library of Congress**  ·  **101 Independence Avenue SE**  ·  **Washington, DC 20559**  ·  **www.copyright.gov**

CIRCULAR 73   REVISED: 10/2015   QUANTITY: 100   Printed on recycled paper                    U.S. GOVERNMENT PUBLISHING OFFICE: 2015-xxx-xxx/xx,xxx