1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Karin Kramer (Bar No. 87346)
2  karinkramer@quinnemanuel.com
   Arthur Roberts (Bar No. 275272)
3  arthurroberts@quinnemanuel.com
   Patrick Burns (Bar No. 300219)
4  patrickburns@quinnemanuel.com
   50 California Street, 22nd Floor
5  San Francisco, California 94111-4788
   Telephone:   (415) 875-6600
6  Facsimile:   (415) 875-6700

7  Thomas C. Rubin (*Pro Hac Vice*)
   tomrubin@quinnemanuel.com
8  600 University Street, Suite 2800
   Seattle, Washington 98101
9  Telephone:   (206) 905-7000
   Facsimile:   (206) 905-7100

10

11

12

13          **UNITED STATES DISTRICT COURT**

14        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                    **OAKLAND DIVISION**

16

| 17 | DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated, | Case No. 4:16-CV-01135-JSW |
|---|---|---|
| 18 | | **DECLARATION OF PAULINE MARTIN IN SUPPORT OF RHAPSODY'S MOTION TO DISMISS PURSUANT TO RULE 12((b)(1) FOR LACK OF ARTICLE III STANDING** |
| 19 | | |
| 20 | Plaintiffs, | |
| 21 | v. | The Hon. Jeffrey S. White |
| 22 | RHAPSODY INTERNATIONAL INC., | |
| 23 | Defendant. | Complaint Filed: March 7, 2016 |

24

25

26

27

28

I, Pauline Martin, declare:

1. I am Director of Music Licensing at Rhapsody International Inc. ("Rhapsody"). I have been at my current position since October 2014. I have 23 years of experience in music licensing and publishing administration, including 20 years working for rightsholders (including a major publishing company). I submit this declaration in support of Rhapsody's Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Article III Standing. I have personal knowledge of the facts set forth in this declaration, except as otherwise noted, and, if called as a witness, could and would testify to those facts under oath.

2. Rhapsody's digital music streaming service offers subscribers access to millions of tracks in return for a monthly subscription fee. These tracks include popular tracks from well-known performing artists signed with major record labels, and also tracks from new, independent, and lesser-known songwriters and musicians, which gives these artists access to millions of music fans.

3. A large proportion of Rhapsody's revenue is paid to rightsholders, including record labels, content aggregators, music publishers (via Rhapsody's licensing administrator, the Harry Fox Agency ("HFA")) and performing rights organizations, who in turn pay the songwriters and artists who create the music.

4. In today's digital music market, streaming services typically receive a sound recording file just hours or days in advance of the release date of the recording. Songwriters, publishers, artists, and labels almost universally expect and require songs or albums to be available to users on streaming services (including Rhapsody) on the release date (or when provided to Rhapsody), not later, and I am informed by Rhapsody's content team that Rhapsody typically receives tens of thousands of new songs every week from record labels and distributors. Accordingly, determining the proper ownership rights for various underlying musical works featured in the sound recordings and licensing those works in advance of their availability on the service is a significant challenge.

5. For this reason, Rhapsody follows industry practice, offering the music immediately, getting licenses issued and issuing Notices of Intention under Section 115 of the

Copyright Act ("NOIs") when the rightsholders are identified, and paying rightsholders irrespective of whether they can be identified in the registration or other public records of the United States Copyright Office.

6. Rhapsody has engaged HFA to administer mechanical licenses and royalties on its behalf and provide research services to identify ownership of musical works. In addition to providing those administration services for Rhapsody (and other digital music services), HFA administers licenses and royalties on behalf of tens of thousands of copyright holders of musical compositions, representing millions of works.

7. HFA is very prominent in the music industry, and its role and function are well known. It is standard industry practice for publishers to actively register their works with HFA, knowing that providing that information will significantly facilitate the licensing process.

8. Based on data provided by HFA, I am informed that in the past, music artists David Lowery, Victor Krummenacher, Greg Lisher, and David Faragher (collectively "Plaintiffs") had entered into a relationship with HFA-affiliated publishers, which assist HFA in the identification of copyright owners and the payment of mechanical royalties. Plaintiffs used well-known HFA-affiliated publishers for several of the tracks on the following albums released by one or more of the Plaintiffs' musical groups: *Our Beloved Revolutionary Sweetheart* (Camper van Beethoven, 1988), *Cracker* (Cracker, 1992), *Kerosene Hat* (Cracker, 1993), *Camper Vantiquities* (Camper van Beethoven, 1993), *The Golden Age* (Cracker, 1996), *Garage d'Or* (Cracker, 2000), *Popular Songs of Great Enduring Strength and Beauty* (Camper van Beethoven, 2008). HFA has advised that it has licenses for those HFA-affiliated publishers' repertoire, and Rhapsody has paid the applicable royalties via HFA, pursuant to HFA's agreements with those music publishers.

9. The mechanical royalties are just a fraction of the overall royalties paid by Rhapsody for use of the music on the Rhapsody streaming service. If Rhapsody (and other streaming services) did not distribute those tracks, then the artists and writers would receive no royalties in respect of distribution of the sound recording and no royalties for public performance of the musical works, which royalties cumulatively can amount to many times the royalties payable in respect of the mechanical licenses. HFA has informed me that it calculates that, through

1 | November 2016, the sum total of the mechanical royalties owing to Plaintiffs by Rhapsody for all
2 | of the compositions listed in the Complaint is less than $70.
3 |     10.    I declare under penalty of perjury under the laws of the United States of America
4 | that the foregoing is true and correct to the best of my knowledge and relying on the sources
5 | indicated above. Executed on February 17, 2017 in Maplewood, New Jersey.

_____
Pauline Martin