SANFORD L. MICHELMAN (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone:    (310) 564-2670
Facsimile:    (310) 564-2671

MONA Z. HANNA (SBN 131439)
mhanna@mrllp.com
JENNIFER A. MAURI (SBN 276522)
jmauri@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
Telephone:    (714) 557-7990
Facsimile:    (714) 557-7991

Attorneys for Plaintiffs
DAVID LOWERY, VICTOR KRUMMENACHER,
GREG LISHER, AND DAVID FARAGHER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>RHAPSODY INTERNATIONAL, INC.<br><br>            Defendant. | Case No.: 4:16-cv-01135-JSW<br><br>Hon. Jeffrey S. White<br>Hon. Jacqueline Scott Corley, Magistrate<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    July 17, 2020<br>Time:    9:00 a.m.<br>Dept:    Courtroom 5<br><br>Complaint Filed: March 7, 2016 |

**TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:**

**YOU ARE HERE BY NOTIFIED THAT** on July 17, 2020 at 9:00 a.m. or soon as thereafter as the matter may be heard in Courtroom 5 of the United States District Court – Northern District, located at 1301 Clay Street, Oakland, California 94612, the Hon. Jeffrey S. White, Plaintiffs David Lowery, Victor Krummenacher, Greg Lisher, and David Faragher (collectively, "Plaintiffs") will move for an Order granting Final Approval for the Class Action Settlement, for an Order confirming certification of the class for settlement purposes only, for an order confirming the appointment of David Lowery, Victor Krummenacher, Greg Lisher, and David Faragher as the Class Representatives of the settlement class, and for an order confirming the appointment of Sanford Michelman, Esq. and Mona Hanna, Esq. of Michelman & Robinson, LLP as Class Counsel for the settlement class. Good cause exists for the granting of the Motion in that the proposed settlement is fair, reasonable, and adequate. The Motion will be based on this Notice of Motion, the Declaration of Jennifer A. Mauri in Support of Motion for Final Approval, the Declaration of Jonathon P. Shaffer in Support of Motion for Final Approval, the Declaration of Jeanne C. Finegan, APR Concerning Implementation of Class Member Notices, and the Memorandum of Points and Authorities, and on such oral and documentary evidence as may be presented at the hearing of the Motion.

Dated: June 12, 2020                **MICHELMAN & ROBINSON, LLP**


                                    By    /s/ Jennifer A. Mauri
                                          Sanford L. Michelman
                                          Mona Z. Hanna
                                          Jennifer A. Mauri
                                          *Attorneys for Plaintiffs*
                                          *and Proposed Class*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

1

### SUMMARY OF ARGUMENT

2   Pursuant to rule 23 of the Federal Rules of Civil Procedure, Plaintiffs David Lowery,

3   Victor Krummenacher, Greg Lisher, and David Faragher (collectively, "Plaintiffs") move this

4   court for an order granting final approval of the class action settlement agreement ("Settlement"

5   or "Agreement") entered into by Plaintiffs and Rhapsody International, Inc. ("Defendant" or

6   "Rhapsody"). As set forth in greater detail in Plaintiffs' Memorandum, in order to be approved, a

7   settlement must be fair, reasonable, and adequate—criteria which Plaintiffs strongly contend the

8   instant settlement meets. As an initial matter, the court-approved notice comports with due

9   process. During the preliminary approval phase, this Court recognized that the Class likely

10   contains thousands of members with unknown identities and/or addresses, and thus, publication

11   was appropriate. Accordingly, the Court approved a notice program that included multiple

12   components, including print publication, targeted online banners, social media, and a website—a

13   plan with which the parties and claims administrator complied. Thus, the Class was provided with

14   the best notice that was practicable under the circumstances, and thus, comports with due process.

15   In addition to the above, in evaluating a proposed class action settlement, the Ninth Circuit

16   requires the Court to balance the following factors: (1) the strength of the plaintiffs' case; (2) the

17   risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

18   action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

19   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

20   presence of a governmental participant; and (8) the reaction of the class members to the proposed

21   settlement. As set forth in greater detail herein, each of these factors weighs in favor of approval—

22   further establishing that the settlement is fair, reasonable, and adequate.

23   Finally, there is no indicia of collusion here—a factor which must be considered when a

24   settlement is reached prior to class certification. The instant settlement was the product of fully

25   informed, arm's-length, non-collusive negotiations, and thus, is presumptively fair. Thus,

26   approval of the instant motion is appropriate.

27   ///

28   ///

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II. RELEVANT BACKGROUND FACTS..................................................................2

    A.  Case History Before Settlement.........................................................................2

    B.  The Settlement Agreement And Preliminary Approval Thereof..........................2

    C.  The Provision of Notice to the Proposed Class ...................................................3

    D.  The Class Period ...............................................................................................4

III. LEGAL STANDARD .......................................................................................4

IV. The Court Should Grant Final Approval of the Settlement ....................................5

    A.  The Court-Approved Notice Comports With Due Process ..................................5

    B.  The Class Relief Warrants Final Approval ........................................................6

        1.  The Strength of Plaintiff's Case................................................................7

        2.  Likely Risk, Expense, Complexity, and Duration of Further Litigation.....8

        3.  The Risk Of Maintaining Class Action Status Throughout The Trial ......10

        4.  The Amount Offered In Settlement.........................................................10

        5.  The Stage Of The Proceedings................................................................12

        6.  The Experience And Views of Counsel....................................................13

        7.  The Reaction of The Class Members To The Proposed Settlement .........14

        8.  The Proposed Settlement Involves No Indicium of Collusion .................14

V.  CONCLUSION .............................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bellinghausen v. Tractor Supply Co.*,

5

    306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................... 8, 12, 13

6

*Ching v. Siemens Indus., Inc.*,

7

    2014 WL 2926210 (N.D. Cal. June 27, 2014) ...................................................................9

8

*Churchill Village, L.L.C. v. General Elec.*,

9

    361 F.3d 566 (9th Cir. 2004) .................................................................................. 4, 5, 6, 14

10

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992) ...........................................................................................4, 6

11

*Dennis v. Kellogg Co.*,

12

    2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...................................................................8

13

*Hanlon v. Chrysler Corp.*,

14

    150 F.3d 1011 (9th Cir.1998) ...................................................................................... 5, 6, 15

15

*Harrison v. E.I DuPont De Nemours & Co.*,

16

    2018 WL 5291991 (N.D. Cal. Oct. 22, 2018) ...................................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,

17

    654 F.3d 935 (9th Cir. 2011) ............................................................................................ 14, 15

18

*Larsen v. Trader Joe's Co.*,

19

    2014 WL 3404531 (N.D. Cal. July 11, 2014) .............................................................. 6, 13, 14

20

*Linney v. Cellular Alaska P'ship*,

21

    1997 WL 450064 (N.D. Cal. July 18, 1997) ..................................................................14

22

*Lundell v. Dell, Inc.*,

    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ...................................................................8

23

*National Rural Telecomms. Coop. v. DirecTV, Inc.*,

24

    221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004) ................................................................. 5, 13, 14, 15

25

*Noll v. eBay, Inc.*,

26

    309 F.R.D. 593 (N.D. Cal. 2015) ...................................................................................8, 10

27

*Officers for Justice v. Civil Serv. Comm'n*,

    688 F.2d 615 (9th Cir. 1982) ..................................................................... 4, 5, 6, 10, 11

28

*Rodriguez v. West Publ'g Corp.*,
        563 F.3d 948 (9th Cir. 2009) ................................................................ 9, 10, 14

**Federal Statutes**

17 U.S.C.
        § 106 .......................................................................................................... 7
        § 115 ....................................................................................................... 2, 7


**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................... 1

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................... 10

Fed. R. Civ. P. 23(c)(2) ............................................................................................ 5

Fed. R. Civ. P. 23(e) ........................................................................................... 6, 10

Music Modernization Act H.R. 1551(d)(10) ........................................................... 9

Music Modernization Act H.R. 1551(e)(15) ........................................................... 9

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Pursuant to rule 23 of the Federal Rules of Civil Procedure, Plaintiffs David Lowery, Victor Krummenacher, Greg Lisher, and David Faragher (collectively, "Plaintiffs") move this court for an order granting final approval of the class action settlement agreement ("Settlement" or "Agreement") entered into by Plaintiffs and Rhapsody International, Inc. ("Defendant" or "Rhapsody"). The instant settlement is fair, reasonable, and adequate—and thus, should be approved. As an initial matter, the court-approved notice comports with due process. During the preliminary approval phase, this Court recognized that the Class likely contains thousands of members with unknown identities and/or addresses, and thus, publication was appropriate. Accordingly, the Court approved a notice program that included multiple components, including print publication, targeted online banners, social media, and a website—a plan which the parties and claims administrator complied with. Thus, the Class was provided with the best notice that was practicable under the circumstances, and thus, comports with due process.

In addition to the above, in evaluating a proposed class action settlement, the Ninth Circuit requires the Court to balance the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Here, each of these factors weighs in favor of approval[1]—further establishing that the settlement is fair, reasonable, and adequate. Finally, there is no indicia of collusion here. The instant settlement was the product of fully informed, arm's-length, non-collusive negotiations, and thus, is presumptively fair. Thus, Plaintiffs move this Court for an order finally approving the Settlement.

///

---

[1] The seventh criteria, "the presence of a governmental participant" weighs neither for nor against settlement, as there is no governmental participant here and thus, this factor is irrelevant.

1

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

## II.     RELEVANT BACKGROUND FACTS

### A.     Case History Before Settlement

On March 7, 2016, Plaintiffs initiated a class action lawsuit against Rhapsody. Rhapsody is an interactive music streaming service with millions of users. Plaintiffs alleged that Rhapsody violated copyright law by reproducing and distributing musical works on its service without consent or license. The crux of Plaintiffs' claim is that Rhapsody had not complied with section 115 of the Copyright Act which, at the time required that Notices of Intent ("NOIs") be served on copyright holders or filed with the Copyright Office by a user within 30 days of the work (songs) being made available to the public. (See ECF. No 1, generally). Serving or filing an NOI resulted in a compulsory license to the work that allowed the user to pay statutory mechanical royalties.[2] Plaintiffs assert that Rhapsody's failure to comply with the Copyright Act made them liable for statutory penalties in excess of one-hundred million dollars.[3]

Reaching a written settlement agreement was a hard fought and protracted effort.[4] On January 16, 2019, the parties agreed upon a written settlement agreement. A copy of the settlement agreement is filed concurrently herewith. (Declaration of Jennifer A. Mauri in Support of Motion for Final Approval ("Mauri Decl."), Exh. A).

### B.     The Settlement Agreement And Preliminary Approval Thereof

On January 16, 2019, the parties executed the Settlement with the following key provisions:

○   Rhapsody shall pay thirty-five dollars ($35.00) for each work that was played in its entirety at least once on the Rhapsody Music Service in the U.S. between March 7, 2013 and February 15, 2019, wherein that work was registered with the U.S. Copyright Office on or before certain dates (*see* Mauri Decl., Exhibit A at ¶30);

○   Rhapsody shall pay one dollar ($1.00) for each work that was played in its entirety at least twenty four (24) times on the Rhapsody Music Service in the U.S. between March 7, 2013

---

[2] Only mechanical royalties are at issue in this lawsuit.
[3] However, based on the factors discussed herein, including Rhapsody's ability to pay a larger figure, the Settlement is fair to the class members.
[4] The concurrently filed Motion for Attorneys' Fees and Costs contains further details of these efforts.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

and February 15, 2019, wherein that work was not registered with the U.S. Copyright Office on or before certain dates (*see id*. at ¶31);

o   This is a claims made settlement without a fund. The maximum total amount payable by Rhapsody shall be capped at ten million dollars ($10,000,000) (*see id.* at ¶32);

o   If the total amount of eligible claims exceeds $10 million, the amount of payment per work shall be reduced by a percentage corresponding to the percentage that the eligible claims made that exceed $10 million (*see id.*);

o   Rhapsody shall institute an Artist Advisory Board ("AAB"), with an annual budget of not less than thirty thousand dollars ($30,000), designed to advance the parties' goals of improving and protecting artists' rights, promoting Rhapsody's service as an artist-friendly platform and thus growing its subscriber base, and providing compensation to artists (*see id.* at ¶49); and

o   Rhapsody shall initiate an artist referral program ("ARP") that will provide artists with a ten dollar ($10) referral fee for each referral who becomes a Rhapsody paying subscriber (*see id.* at ¶50).

Plaintiffs sought preliminary approval of the settlement, which Rhapsody did not oppose, and the Court preliminarily approved the settlement on March 21, 2019. (ECF No. 165).

## C.   The Provision of Notice to the Proposed Class

The Preliminary Approval Order required the Parties to provide notice to the Class *via* publication. (ECF No. 165). Specifically, the Court ordered notice program included multiple components, including print publication, targeted online banners, social media, and a website. (*Id.*). The notice program complied with the Court's order granting preliminary approval by including the following components: CAFA Notice to appropriate state and federal government officials; print publication in three (3) nationally circulated entertainment and music magazines targeted to reach class members (Rolling Stone, Billboard Magazine, and Music Connection); online display banner advertising specifically targeted to reach Class Members; keyword search targeting Class Members; a press release across PR Newswire's US1 Newslines (issued jointly by the parties); social media through Facebook, Instagram and Twitter; an informational website on which the notices and other important Court documents are posted; and a toll-free  24 hour per day information line from which Class Members could receive information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

(Declaration of Jeanne C. Finegan, APR Concerning Implementation of Class Member Notification ("Finegan Decl.") at ¶¶8, 9-31). Additionally, per Court Order (ECF No. 195), further notice was provided to the class. (*Id*. at ¶23-24). Based on these efforts, the Claims Administrator estimates that "an estimated 72 percent of targeted Class Members nationwide were reached approximately 3 times." (*Id*. at ¶32).

### D.   **The Class Period**

The following is a summary of the claims received during the class period: As of June 4, 2020, Heffler has received 581 claims filed electronically through the Settlement Website and 24 claims filed by paper through the mail encompassing a total of 16,296 works. (Declaration of Jonathon P. Shaffer ("Shaffer Decl.") at ¶¶12). Of the works submitted 4,277 are currently categorized as being potentially valid and 12,019 have been categorized as either deficient and additional information has been requested or rejected as they were outside the scope of the Settlement. (*Id*.).  As of June 11, 2020, Heffler has mailed 651 deficiency and rejection letters which encompassed 12,242 claimed works to Class Members. (*Id*. at ¶14). As of June 11, 2020, Heffler has received 42 deficiency responses back from Class Members. (*Id*. at ¶ 15). Heffler continues to receive further responses as the latest postmark deadline to provide responses currently is June 11, 2020. (*Id*.). No objections or opt-outs were received. (*Id.* at ¶13).

## III.   **LEGAL STANDARD**

The law favors the compromise and settlement of class action suits. *See Churchill Village, L.L.C. v. General Elec*., 361 F.3d 566, 575-576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). To that end, as a matter of sound policy, settlements of disputed claims are encouraged, and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

1    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998) (quoting *Officers for Justice*, 688

2    F.2d at 625).

3         In evaluating a proposed class action settlement, the Ninth Circuit requires the Court to

4    balance the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense,

5    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

6    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

7    and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of

8    the class members to the proposed settlement.[5] *Churchill*, 361 F.3d at 575 (citing *Hanlon*, 150

9    F.3d at 1026); *Officers for Justice*, 688 F.2d at 625. Additionally, Courts consider "the possibility

10   of collusion." *Churchill*, 361 F.3d at 577. The balance of these factors decidedly weighs in favor

11   of final approval of the Settlement.

12   **IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

13        **A.    The Court-Approved Notice Comports With Due Process**

14        Before the Court may grant final approval of a settlement, the Federal rules requires the

15   Court to determine that the settlement provides the class with the "best notice that is practicable

16   under the circumstances, including individual notice to all members who can be identified through

17   reasonable effort." Fed. R. Civ. P. 23(c)(2). "Notice is satisfactory if it 'generally describes the

18   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and

19   to come forward and be heard.'" *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist.*

20   *No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)). As the Court already considered at the preliminary

21   approval phase, the Class likely contains thousands of members with unknown identities and/or

22   addresses, and thus, individual notice was not practical. (*See* ECF No.165).  When that is the case,

23   publication "effected by means of a Settlement Website, press releases, internet notices, and print

24   publication" can be sufficient to provide notice. See *Harrison v. E.I DuPont De Nemours & Co.*,

25   2018 WL 5291991, at *2 (N.D. Cal. Oct. 22, 2018). Accordingly, the Court preliminarily approved

---

[5] An additional factor to be considered is "the presence of a governmental participant." *Churchill*,
361 F.3d at 575. However, no such actor is present in this litigation, and thus, this consideration is
inapplicable. *National Rural*, 221 F.R.D. at 528 ("There is no governmental participant in this
Class Action. As a result, this factor does not apply to the Court's analysis.").

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

publication as the means to provide notice. Here, following preliminary approval, the Claims Administrator appointed by the Court, implemented the Notice plan in compliance with the Court's Preliminary Approval process. (Finegan Decl., *generally*). Details of that plan are provided in Section II(C), above. Thus, under the circumstances of this case, the "best notice practicable" was disseminated.

### B.   The Class Relief Warrants Final Approval

A court may grant approval if it determines that the proposed class action settlement is "fair, adequate, and reasonable." *Churchill*, 361 F.3d at 576; *see also Hanlon*, 150 F.3d at 1026. There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs*, 955 F.2d at 1276; *see also Churchill* at 576 (citing *Hanlon* at 1026); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.")Even still, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

In order to evaluate the fairness, adequacy and reasonableness of a proposed class settlement, courts weigh the following non-exhaustive list of factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill* at 575 (citing *Hanlon* at 1026). No one factor controls, and the "importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. An examination of these factors reinforces this Court's preliminary finding that the Settlement meets these requirements and warrants approval.

*///*

### 1.     *The Strength of Plaintiff's Case*

Plaintiffs and Class Counsel believe their claims to be strong. Indeed, this is a very straightforward case of copyright infringement. There is no question that Rhapsody began reproducing and distributing copyright owners' musical works on its music streaming service without license and without payment of royalties. Section 106 of the Copyright Act grants to copyright owners a number of exclusive rights, including: (a) the right to reproduce the copyrighted work in copies or phonorecords, and (b) the right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. (*See id.* at §§ 1 & 3.) Thus, one who reproduces or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright. Here, the Copyright Act provides a mechanism for services such as Rhapsody to avoid infringement—obtaining a mechanical license. Rhapsody had two ways of obtaining the mechanical licenses necessary to reproduce and distribute musical works: (1) directly negotiate and obtain a voluntary license from the owners, or (2) obtain a "compulsory" license under the Copyright Act.

Here, Plaintiffs did not grant any voluntary or direct licenses to Rhapsody. Nor did Rhapsody obtain compulsory mechanical licenses under Section 115, as it failed to comply with the statutory requirement that it serve or file a Notice of Intent (NOI) "before or within thirty days after making, and before distributing any phonorecords of the work." (17 U.S.C. § 115(b)(1).) Accordingly, Rhapsody's failure to timely file or serve NOIs "forecloses the possibility of a compulsory license" and Rhapsody is liable for making and distributing the Works without license. As such, liability is a foregone conclusion. The only question was the extent of that liability. As Plaintiffs previously informed the Court, based on early investigations and data provided by Rhapsody, Plaintiffs estimated that Rhapsody's liability is in the range of $846,174,000 (applying even the lowest statutory damages rate (*i.e.*, $750 per infringed work)) to $33,846,960,000 (applying the high end of the statutory damage rate (*i.e.*, $30,000 per infringed work)). However, as explained further in Section IV(B)(4) below, it is highly unlikely that Rhapsody could pay a judgment beyond $10,000,000 and thus, any award in excess of that amount would likely go unpaid.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

1

          2.       ***Likely Risk, Expense, Complexity, and Duration of Further Litigation***

2         One of the key factors in evaluating a proposed settlement is the risk of continued litigation

3  balanced against the certainty and immediacy of recovery from a settlement. Ultimately, while

4  Plaintiffs maintain that they have a strong case, there are inherent uncertainties in litigation.

5  *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) ("Although each side

6  could be expected to champion the merits of its case if this matter were to proceed to trial, both

7  must also recognize the inherent uncertainty of litigation."). "Generally, unless the settlement is

8  clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

9  with uncertain results." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) (quoting *Ching*

10  *v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)). Thus, "[i]n light of

11  the risks and costs of continued litigation, the immediate rewards to class members are preferable."

12  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015); *see also Dennis v.*

13  *Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013) ("[S]ettlement avoids the risks

14  of extreme results on either end, *i.e.*, complete or no recovery. Thus, it is plainly reasonable for

15  the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh

16  the opportunity to pursue potentially more favorable results through full adjudication").

17     Here, the risks of continued litigation are substantial. Had this case proceeded to litigation,

18  there is no doubt that Defendants would vigorously deny liability, as they have done throughout

19  this action. Rhapsody filed a motion to dismiss early on in the case which was taken off calendar

20  pending settlement discussions. Rhapsody has made clear that it would have re-filed the motion

21  had the case not settled. Assuming Plaintiffs prevailed thereon, the next procedural hurdle in this

22  action would be class certification. Which, again, Rhapsody would likely have vigorously

23  opposed. Thereafter, assuming Plaintiffs prevailed on a motion for class certification, Plaintiffs

24  would still likely face a summary judgment motion from Rhapsody in advance of any trial.

25  Further, a full trial on this issue would be costly to all parties (requiring months of preparation and

26  the calling of witness and experts from across the country) and would require significant judicial

27  oversight. Further, in light of the contested nature of every aspect of this case, even a judgment

28  favorable to Plaintiffs and the class would unquestionably be the subject of post-trial motions and

further appeals, which would substantially prolong the case. "[S]ettlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014). If the parties were to continue litigating, the class members would have to wait many more years for any recovery, even if Plaintiffs prevailed at every stage of the litigation. Settlement of this litigation will ensure a substantial recovery now and eliminate the risk of no recovery at all. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (favoring settlement and finding this factor satisfied where "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years"). Moreover, further litigation presents absolutely no guarantee that class members would achieve any recovery, let alone a recovery greater than that provided by the proposed Settlement.

In addition to the inherent risks of litigation, there is a substantial factor specifically applicable to this case: the passage of the Music Modernization Act ("MMA"). The MMA was enacted on October 11, 2018 and set limits on liability for entities who did not acquire mechanical licenses in accordance with the prior statutory scheme. Specifically, any copyright owner who commences a copyright infringement action "on or after January 1, 2018 against a digital musical provider [for] activities prior to the license availability date" will be limited to a "sole and exclusive remedy" of royalties. (H.R. 1551(d)(10)). The "license availability date" is January 1, 2021. (*See* H.R. 1551(e)(15)). The instant action is not affected by the MMA's limits on liability. However, assuming *arguendo*, that this action was continued and class certification was not granted (although Plaintiffs strongly believe that such certification would occur) then only the four named plaintiffs would have the ability to seek statutory damages from Rhapsody. It is likely that Rhapsody would argue that the remaining putative class members would be barred from seeking statutory damages (the bulk of the liability) and would be left to seek royalties only— which Rhapsody asserts are less than $1.00 on average. (*See* ECF No. 81 at p. 7:1-2). In other words, litigating this action would have been lengthy and expensive. "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success ///

on the merits, has value to a class, especially when compared to risky and costly continued litigation." *Noll,* 309 F.R.D. at 606.

Lastly, even if Plaintiffs—years down the road—ultimately succeed, that success would likely bankrupt Rhapsody. As explained in section IV(B)(4) below, it is highly unlikely that Rhapsody could pay a judgment beyond $10,000,000 and thus, any award in excess of that amount would likely go unpaid. Again, although Plaintiffs believe that the case is meritorious, experience has taught how the risks discussed above can render the outcome of a lengthy litigation and trial extremely uncertain. Accordingly, this factor weighs in favor of final approval.

### 3.    *The Risk Of Maintaining Class Action Status Throughout The Trial*

This case settled before the Court formally considered class certification. The proposed class herein is a settlement class, agreed to in the context of settlement negotiations. Although Plaintiffs are confident class certification is appropriate here, similar to the risk inherent in pursuing the merits of the case is the risk of certifying and then maintaining class status throughout the litigation. Moreover, as with any litigation, even if a class is ultimately certified, the decision is not made in stone and could be reconsidered based on findings of fact in the underlying case or new case law. Fed. R. Civ. P. 23(c)(1)(C); *Rodriguez,* 563 F.3d at 966 ("A district court may decertify a class at any time.") This factor too weighs in favor of final approval of the settlement.

### 4.    *The Amount Offered In Settlement*

The general standard by which courts are guided when deciding whether to grant final approval of a settlement is whether the proposed settlement falls within the range of what could be found "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e).  Because settlement by its nature is a compromise, the law does not require that a settlement reflect the best possible result in the litigation. *See Officers for Justice*, 688 F.2d at 624 ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"). Rather, a settlement must simply fall within the ambit of reasonableness. *See id.* at 625 ("[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

///

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

Although Plaintiffs believe Rhapsody faced substantial liability here, the Settlement Agreement sets a $10,000,000 - $20,000,000 cap. (*See* Mauri Decl., Exh. A at ¶ 32.) This amount is reasonable because of Rhapsody's financial reality. The parties have engaged in discovery as to Rhapsody's financial status, and Plaintiffs' Counsel is satisfied that Rhapsody's financial status cannot support any settlement amount greater than the figure to which the parties have agreed.[6] It is highly unlikely that Rhapsody could pay a judgment beyond $10,000,000 and thus, a larger settlement would likely go unpaid. Further, the Settlement Agreement provides safeguards in the event that Rhapsody's representations as to its financial status are inaccurate: in such an event, the cap increases up to $20,000,000. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "This is particularly true in cases, such as this, where monetary relief is but one form of relief requested by the plaintiffs." *Id.* In other words, the monetary value of the settlement need not meet any particular percentage threshold of the overall potential value of the case. *See id.* Here, the parties agreed to a claims made settlement with a cap of $10 million (which may increase up to $20,000,000 in the event that Rhapsody's financial representations were inaccurate). The $10 million cap is not "per se inadequate or unfair" given the limitations outlined above. *Officers for Justice*, 688 F.2d at 628. As a result of the Settlement, the class members will receive monetary compensation, including artists who had unregistered works that would not have been entitled to royalties. Indeed—over the span of just three years, Rhapsody streamed over 7.7 million songs at least once that were "unmatched" to the songwriter—meaning that Rhapsody was unable to identify the mechanical rightsholder to obtain a license, and/or pay out the royalties for the distribution and reproduction of those works. Through the Settlement, Rhapsody's liability for these violations will be rectified. Under the terms of the settlement, the rights holder for each Qualified Registered Work will receive $35.00, and the rights holder for each Qualified Unregistered Work will receive $1.00 (subject to proportional

---

[6] Plaintiffs' Counsel has reached this position based on representations by Rhapsody and on review of certain of Rhapsody's financial documents (a list of which is attached to the Settlement Agreement as Exhibit D.)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW

reduction is the cap is reached). This is a substantial monetary award compared to the "less than $1.00" amount of royalties which Rhapsody contends are owed. (*See* ECF No. 81 at 7:1-2). Although this amount is less than the amount of statutory damages that each class member could potentially receive, as explained above, there are substantial risks in further litigation, and thus, the cash settlement amounts to class members are both adequate and fair.

In addition to the financial terms, the Settlement contains significant valuable non-monetary terms. The Settlement provides practical and on-going benefits to Class Members, which strongly supports approval. Rhapsody will institute an Artist Advisory Board that, *inter alia*, will work with Rhapsody to promote artists' rights and improve Rhapsody's business practices as they relate to rightsholders. This is an incalculable benefit. The Artist Advisory Board will have an annual budget of not less than $30,000 to achieve those goals. As such, this Settlement provides substantial non-monetary benefits to not only the current members of the putative class, but also to future copyright holders whose music Rhapsody will stream.

### 5. *The Stage Of The Proceedings*

Formal discovery is not a prerequisite for class action settlement approval as long as counsel for both parties possess sufficient information to properly evaluate the preliminarily approved settlement. *Bellinghausen*, 306 F.R.D. at 257 (formal discovery is not a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution."). Plaintiffs respectfully submit that the evaluation conducted in this action provided Plaintiffs and Plaintiffs' Counsel with ample information to properly and fairly assess the merits of the proposed Settlement. For instance, prior to filing the complaint, Plaintiffs' Counsel conducted a thorough investigation of, and extensive research on, the merits of pursuing these claims. (Mauri Decl. at ¶3). Additionally, although formal discovery was largely stayed throughout this case, Plaintiffs engaged in both informal and formal discovery. (*Id.*). Further, Plaintiffs prepared for and engaged in three mediations and a settlement conference, wherein that a settlement conference was with Magistrate Judge Corley. (*Id.*). Yet further, the Parties engaged in multiple disputes during the claims administration period, for which, Plaintiffs' counsel engaged in yet further extensive investigations related thereto. (*Id.*). As

a result, Plaintiffs had a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement before entering into it. *See Bellinghausen*, 306 F.R.D. 245, 257 (finding parties could identify strengths and weaknesses of claims without formal discovery because, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'") (quoting *Linney v. Cellular Alaska P'shp*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

### 6.   *The Experience And Views of Counsel*

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See, e.g., Larsen*, 2014 WL 3404531, at *5 ("The opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases.") *National Rural,* 221 F.R.D. at 528. ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Bellinghausen*, 306 F.R.D. 245, 257 ("Given counsel's experience in this field, his assertion that the settlement is fair, adequate, and reasonable support final approval of the settlement."). Michelman & Robinson has substantial experience litigating and settling complex class actions. (*See* Mauri Decl. at ¶4). M&R is nationally recognized due in part to the innovative work it has performed on countless high-stakes state and federal class actions and complex matters over the past years, across a broad spectrum of practice areas, including intellectual property. (*Id.*). In defense of class actions, M&R has represented parties in over 50 cases that all resolved positively for the clients, and were handled efficiently and without issue for the parties, counsel, or court. (*Id.*). M&R has a well-established intellectual property and copyright practice, and regularly handles matters involving copyrights and other digital rights in the music and entertainment industry. (*Id.*). Moreover, M&R handles all stages of trademark and copyright prosecution in the United States Patent and Trademark Office and the United States Copyright Office. (*Id.*). In addition to the firm's broad litigation experience, the lead trial attorneys on this case have each been individually recognized as leading practitioners in the areas of complex and class action litigation. (*Id.* at ¶5). As such, Plaintiffs' attorneys are highly

experienced and their opinion that this Settlement is fair, adequate, and reasonable should be given great weight.

Again, Plaintiffs' Counsel unambiguously recommend this Settlement as fair, adequate, and reasonable and respectfully ask that it is given final approval. Ultimately, after considering the monetary and non-monetary terms of the settlement, and after assessing the substantial risks of further litigation, Plaintiffs' Counsel, drawing on decades of experience litigating cases like this one, and with the input of two mediators and Magistrate Judge Corley, determined that the Agreement is fair and reasonable and constitutes a positive result for the class in this case.

### 7.    *The Reaction of The Class Members To The Proposed Settlement*

A court may appropriately infer that a class settlement is fair, adequate, and reasonable when few Class members object to it. *National Rural,* 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Indeed, the deadline to object or opt out had passed and **no class member either elected to opt out of the settlement or made objections**. (Shaffer Decl. at ¶13). This kind of positive reaction on the part of the Settlement Class typically supports final settlement approval. *See Larsen*, 2014 WL 3404531, at *5 ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."

### 8.    *The Proposed Settlement Involves No Indicium of Collusion*

Where, as here, a settlement agreement is negotiated prior to formal class certification, there is an additional issue that should be considered in addition to the above described eight *Churchill* factors—whether the proposed settlement has any indicia of collusion. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011). Here, there are no such indicia. Instead, where a settlement was the product of fully informed, arm's-length, non-collusive negotiations, the settlement is presumptively fair. *See Linney v. Cellular Alaska P'ship*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *see Rodriguez*, 563 F.3d at 965

("This circuit has long deferred to the private consensual decision of the parties."); *Hanlon*, 150 F.3d at 1027; (approval order "reflected the proper deference to the private consensual decision of the parties"); *National Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. Jan. 5, 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Further, there is no danger of collusion when the Settlement is the product of arms-length negotiations by experienced counsel aided by an experienced mediator. *See Bluetooth*, 654 F.3d at 948 (holding that, while participation of a mediator is not dispositive, but is "a factor in favor of a finding of non-collusiveness").

Here, between May 2016 and April 18, 2018, the parties attended three mediations and engaged in numerous phone calls and email exchanges in a continual attempt to reach a settlement. The parties agreed to the fundamental terms of the settlement in a Memorandum of Understanding signed by the parties in May 2017. (Mauri Decl. at ¶7). Various disputes interfered with the completion of the settlement. (*Id.*). Accordingly, the parties attended a settlement conference with Judge Corley on October 11, 2018. (*Id.*). Further progress was made, and a final settlement conference was held on January 15, 2019, wherein the parties a written settlement agreement. (*Id.*). Given these facts, there is no indicium of collusion, and the settlement is appropriate for final approval.

## V.   **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant the instant motion.

Dated: June 12, 2020                    **MICHELMAN & ROBINSON, LLP**


By      ___/s/ *Jennifer A. Mauri*_____
        Sanford L. Michelman
        Mona Z. Hanna
        Jennifer A. Mauri
        *Attorneys for Plaintiffs*
        *and Proposed Class*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 4:16-cv-01135-JSW