QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Karin Kramer (Bar No. 87346)
  karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Thomas C. Rubin (*Pro Hac Vice*)
  tomrubin@quinnemanuel.com
600 University Street, Suite 2800
Seattle, Washington 98101
Telephone:     (206) 905-7000
Facsimile:     (206) 905-7100

  Cory D. Struble (*Pro Hac Vice*)
  corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7082
Facsimile:     (212) 849-7100

*Attorneys for Rhapsody International, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RHAPSODY INTERNATIONAL INC.,<br><br>Defendant. | Case No.  4:16-CV-01135-JSW<br><br>**DEFENDANT RHAPSODY INTERNATIONAL INC.'S BRIEF IN SUPPORT OF, AND PROVIDING ADDITIONAL INFORMATION RELEVANT TO, FINAL APPROVAL**<br><br>Date:           July 17, 2020<br>Time:          9:00 AM<br>Courtroom:   5<br><br>Complaint filed:      March 7, 2016 |

**TABLE OF CONTENTS**

*Page*

I. This Is A Claims-Made Settlement Without A Fund; Those Claims Total $55,032 .............1

II. The Case Was On a Clear Path To Settlement From The Beginning ...................................2

III. The Settlement Is Generous to Those Class Members Who Participated..............................3

IV. Section 115 Has Been the Subject of Congressional Reform Efforts Since the Advent of Digital Music Services in the Early 2000s............................................................3

V. Plaintiffs Misstate the Settlement Provisions Related to the Artist Advisory Board.............6

VI. Rhapsody's NMPA Agreement Wipes Out Plaintiffs' Class, and Its Negotiation Long Predated This Litigation................................................................................................6

Defendant Rhapsody International Inc. ("Rhapsody") joins Plaintiffs and "unambiguously recommend[s] this Settlement as fair, adequate, and reasonable and respectfully ask that it is given final approval." Plaintiffs' Final Approval Brief, Dkt. 207 ("FA Brief" or "FA Br."), at 14. In addition, Rhapsody submits information which it believes is important context for the claims participation rate, among other things.

**I.    This Is A Claims-Made Settlement Without A Fund; Those Claims Total $55,032**

Plaintiffs contradict themselves when describing the nature of this settlement. In their Final Approval brief they correctly state it is a "claims made settlement without a fund." FA Br. 3. But in their Motion for Award of Attorneys' Fees and Costs, Dkt. 208 ("Fee Motion" or "Fee Br."), they falsely claim it includes a $20 million fund. Fee Br. 1, 9, 12–13. Because Plaintiffs also state several times in their Final Approval brief that Rhapsody's "liability" under the settlement was $10 to $20 million, FA Br. 3, 7, 10–11, Rhapsody writes to set the record straight. This is a claims made settlement; there is no common fund of any amount, let alone $20 million. This is not an arguable point.

The Settlement Agreement contains no floor on payments, but it does provide a backstop cap if claims exceeded $10 million. Dkt. 207-2, Ex. A ("SA") ¶ 32. Although Plaintiffs claim the cap represents the maximum amount Rhapsody could pay based on its financial position, FA Br. 3, Plaintiffs cite nothing to back that up and it is not true. Nor does $10 million have any relationship to the amount of expected claims. To the contrary, Rhapsody repeatedly advised Plaintiffs that the total claims in this case would be small, principally because (1) royalties owed the vast majority of class members were well under one dollar (FA Br. 9, 11–12), (2) Rhapsody had licenses in place for a substantial number of the mechanical rights at issue here, and (3) a separate industry-driven agreement being engineered by the National Music Publishers Association ("NMPA") was already in process and would cause Plaintiffs' class to dwindle to almost nothing, just as it has (Dkt. 158 at 4–5). The NMPA settlement addressed the exact same claim as Plaintiffs' case and required the large number of copyright owners in musical works that opted in to grant licenses and release

Rhapsody from the claim in this lawsuit.[1]

As Rhapsody predicted, the claims in this action are miniscule, particularly compared to the ruinous damages Plaintiffs kept promoting in their submissions to the Court. In their Final Approval brief, Plaintiffs' detailed total *number* of claims only. FA Br. 4. They failed to apprise the Court of the number of unique claimants (209) or the *dollar amount* that corresponds to those claims: $50,032. *See* Supplemental Declaration of Jonathan P. Shaffer, *filed concurrently herewith* ("Shaffer Decl."), ¶¶ 14-16.

In a transparent effort to inflate the class recovery and justify an unreasonable fee request, Plaintiffs falsely claim that "Class Counsel has achieved a net settlement fund of $20,444,567," Fee Br. 1, later describing it as "a gross settlement fund [of] $20,341,500," *id.* 9. These statements willfully misrepresent the terms of the settlement, and, as shown above, contradict Plaintiffs' own description of the settlement. And, importantly, their statements here violate Paragraph 86 of the Settlement Agreement, which explicitly provides: "Plaintiffs will not claim in any manner that [cap] provision changes the settlement cap to a fund." SA ¶ 86; *see also id.* ¶ 32 (no issue of reverter). No amount of obfuscation or deception can change the fact that this is a claims made settlement without a fund, and that Rhapsody will be paying a total of $55,032 to the class.

## II.   The Case Was On a Clear Path To Settlement From The Beginning

Plaintiffs filed this action on March 7, 2016, over four years ago, alleging Rhapsody violated the compulsory mechanical license provisions of Section 115 of the Copyright Act. Congress had recognized many years ago those requirements were outdated and that it was impossible for digital

---

[1]  Plaintiffs again make an absurd claim, contradicted by the Claim Form and their own prior statements, challenging whether Rhapsody's NMPA agreement overlapped with and greatly diminished this class. Dkt. 208-3 (Mauri Decl.) ¶ 35. Plaintiffs' Complaint alleged that Rhapsody infringed musical works of copyright owners by failing to comply with the compulsory license requirements of Section 115. *See* Dkt. 1 at 2, 8. The NMPA represents the biggest copyright owners of musical works, and the Rhapsody-NMPA agreement, like the similar Spotify-NMPA agreement, resolved claims that the company failed to comply with the compulsory license requirements of Section 115. *See* Dkt 158 at 4–5. The claims of infringement and the rightsholders in musical works are identical, so much so that those copyright owners that participated in the NMPA agreement cannot make a claim and participate in this settlement. *See* Claim Form at 1 ("You are not eligible to submit a claim for a work if…[y]ou participated in the [Rhapsody-NMPA] settlement," Dkt 155-5 at 61.

music streaming services to comply with them. *See* Dkt. 158 at 1–2. Rhapsody explained from the start of the case that it was highly motivated to settle promptly and efficiently because it was in a difficult position financially and wanted to avoid expensive class action litigation. It also knew, and told Plaintiffs (and the Court), that a settlement with the NMPA, which already was in process when Plaintiffs sued Rhapsody, would wipe out their class. That alone made it crystal clear that this was not the big ticket case Plaintiffs believed it to be. Hence, as Plaintiffs admit, Rhapsody immediately proposed a settlement discussion and then a mediation, Fee Br. 2, discovery was largely stayed throughout the entirety of the case, FA Br. 12, and the parties agreed to all of the fundamental terms of the settlement by May 2017, over three years ago, *id.* 15.

### III. The Settlement Is Generous to Those Class Members Who Participated

The Settlement Agreement provides generous payments to claimants: $35 per registered work and $1 per unregistered work for those musical works underlying the sound recordings provided by Rhapsody's record label partners as to which Rhapsody (or the Harry Fox Agency as Rhapsody's administrator for mechanical licenses) was unable to identify the copyright owner. FA Br. 2; SA ¶¶ 30–31. Actual royalties owed to those copyright owners are under $1 per work. FA Br. 9, 12. Owners of unregistered works were not entitled to sue by law, so payment to them under the settlement was unnecessary but beneficial to them as rightsholders—and consistent with Rhapsody's policy of paying rightsholders even where the works are not registered because it is the right thing to do. FA Br. 11. Without the inclusion of unregistered works, the total of claimed works that were valid would have decreased from 4,426 to 1,320. Shaffer Decl. ¶ 14.

### IV. Section 115 Has Been the Subject of Congressional Reform Efforts Since the Advent of Digital Music Services in the Early 2000s

The Rhapsody music service was launched in 2001 and was the very first digital music service to offer an on-demand music subscription service featuring music from all recognized major record labels for a flat fee. *See* Dkt. 208-3 (Mauri Decl.) ¶ 3. As Plaintiff David Lowery has noted, Rhapsody has always been viewed as being very supportive of artists and copyright owners, and is "[t]he highest-paying streaming service." @DavidCLowery, TWITTER (April 4, 2019, 10:20 AM https://twitter.com/davidclowery/status/1113808558905286656. As a digital music streaming

pioneer, Rhapsody has known firsthand the disservice to all industry participants—including the artists, songwriters and publishers—of applying an outdated compulsory license scheme to the speed and scale of digital music services, and has been an active participant in Congress's efforts to amend Section 115 for many years before this litigation began.

Contrary to Plaintiffs' assertion in their Fee Brief (at 7–8), the issues raised in this case are by no means novel.  Over a year before this case was filed, in February 2015, the Copyright Office released its landmark report "Copyright and the Music Marketplace," which concluded that "[o]ur licensing system is broken" and "accurate, comprehensive, and accessible licensing information . . . [is] essential to a better functioning music licensing system."  U.S. Copyright Office, "Copyright and the Music Marketplace," at 1, 183, *A Report of the Register of Copyrights*, February 2015, *available at* https://copyright.gov/docs/musiclicensingstudy/copyright-and-the-music-marketplace.pdf.  Specifically, the Copyright Office proposed "an updated framework for the licensing of musical works," *id.* at 9, and forwarded recommendations for reform to Congress for its consideration, *id.* at 201–02.

That 2015 report was built on years of Congressional and Copyright Office study of the inherent impossibility that the compulsory license regime presented to digital music services like Rhapsody.  At a House Judiciary Committee hearing considering the "Section 115 Reform Act" back in 2006, for instance, Register of Copyrights Marybeth Peters testified about this precise issue:

> [T]he existing section 115 does not comport with the realities of the digital environment in which music creators, distributors and users now operate… The most critical and time-sensitive issue is the current unavailability of an efficient and reliable mechanism whereby legitimate music services are able to clear all of the rights they need to make large numbers of musical works quickly available by an ever-evolving number of digital means while ensuring that the copyright holders are fairly compensated….

U.S. House of Representatives, 109th Congress, 2nd Session, Statement of the U.S. Copyright Office before the Subcommittee on Courts, the Internet, and Intellectual Property, Committee on

the Judiciary, May 16, 2006;[2] *accord* FA Br. 1 ("the Class likely contains thousands of members with unknown identities and/or addresses").

Following the release of the Copyright Office's 2015 report, Congress took up the issue and, in October 2018, enacted the Music Modernization Act, which completely does away with the inoperable music licensing scheme that is the focus of this lawsuit and provides for blanket licensing of musical works. 17 U.S.C. § 115(d). Plaintiffs' claim that this lawsuit led to the consideration and enactment of the MMA, *see* Fee Br. 8, is a fictional rewrite of this well-documented history.

At its core, the MMA changes the business practices of every player in the digital music ecosystem in relation to mechanical licenses, from copyright owners to licensing agencies to music services. See Dkt 160 at 4 (Plaintiffs' acknowledgement that "the MMA changed the music licensing landscape"). Like others, Rhapsody's business and licensing practices will fundamentally change because the MMA eliminates the old and unworkable Notice of Intent procedure with a new blanket license. 17 U.S.C. § 115(d). Ignoring the MMA, Plaintiffs would have this Court believe that the Settlement Agreement led to changes in Rhapsody's practices, Fee Br. 4, 10, but that is unsupportable and untrue. There is no injunctive relief in the Settlement Agreement and nothing that requires Rhapsody to change its practices to meet Section 115. The MMA alone does that.

Nor is this litigation novel. The same lawyers who brought this suit first sued Spotify in the Central District of California, and Spotify was also sued by other law firms before this case was filed.[3] In fact, the complaint Plaintiffs filed against Rhapsody is a virtual carbon copy of their previously filed complaint against Spotify. *See Ferrick v. Spotify USA Inc.*, No. 16-cv-08412 (S.D.N.Y.), Dkt, 1. Moreover, even if the filing of the case had been a novelty, none of the "novel" issues that might have been raised were raised in this case, as the case immediately moved into settlement discussions.

---

[2] *Available at* https://www.copyright.gov/docs/regstat051606.html.

[3] In the Spotify case, Plaintiffs' case was consolidated with other cases; Plaintiffs' counsel here was rejected as class counsel; and it was eventually awarded zero in attorney' fees after making a claim for $3,699,148.75. *Spotify USA Inc.*, No. 16-cv-08412 (S.D.N.Y.), Dkt. 418 at 24–25.

### V. Plaintiffs Misstate the Settlement Provisions Related to the Artist Advisory Board

As part of the Settlement Agreement, Rhapsody will create an Artists Advisory Board (AAB) and fund it with $30,000. SA ¶ 49. The precise role and function of the AAB, which, as its name demonstrates, is an *advisory* board, are delineated as follows: "The AAB shall be designed to advance the parties' mutual goals of improving and protecting artists' rights, promoting Rhapsody's service as an artist-friendly platform and thereby growing its subscriber base, and providing compensation to artists." *Id.* Plaintiffs' submissions to the Court, however, misrepresent the scope of the AAB and invent out of thin air responsibilities that appear designed to inflate its role. Plaintiffs claim that the AAB "is designed, *inter alia*, to provide oversight," Fee Br. 1, and "will, *inter alia*, be used to provide internal oversight over Rhapsody's behavior that led to this action," *Id.* at 10. That is false; the Settlement Agreement contains no such provision.

### VI. Rhapsody's NMPA Agreement Wipes Out Plaintiffs' Class, and Its Negotiation Long Predated This Litigation

As explained earlier, prior to the initiation of this litigation, Rhapsody had been engaged in extensive discussions with the NMPA, whose members are leading music publishers and other large copyright owners of musical works, who would otherwise be members of the class in this case. Dkt. 158 at 3. The Rhapsody-NMPA agreement wiped out Plaintiffs' class, as copyright owners in musical works with an approximately 97% market share opted into that agreement. *Id.* Importantly, participants in that agreement explicitly waived their right to join the class in this case and to participate in the settlement. *See* Dkt. 155-5.

Plaintiffs' submission mentions the Rhapsody-NMPA agreement, but distorts it beyond recognition to claim that Rhapsody's settlement with the NMPA shows that "Rhapsody was insecure in its ability to prevail in this case." Fee Br. 8. Neither Rhapsody nor its counsel has any idea what that means. If it shows anything, it is that Rhapsody is a good citizen in the industry and has always worked with the industry players to solve the intractable problem of Section 115 and ensure the efficient payment of royalties to copyright owners.

DATED: June 26, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Karin Kramer*
    Karin Kramer
    Thomas C. Rubin
    Cory D. Struble

*Attorneys for Rhapsody International Inc.*