QUINN EMANUEL URQUHART & SULLIVAN, LLP
Karin Kramer (Bar No. 87346)
karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Thomas C. Rubin (*Pro Hac Vice*)
tomrubin@quinnemanuel.com
600 University Street, Suite 2800
Seattle, Washington 98101
Telephone:     (206) 905-7000
Facsimile:     (206) 905-7100

Cory D. Struble (*Pro Hac Vice*)
corystruble@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7082
Facsimile:     (212) 849-7100

*Attorneys for Rhapsody International Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RHAPSODY INTERNATIONAL INC.,<br><br>Defendant. | Case No.  4:16-CV-01135-JSW<br><br>**DEFENDANT RHAPSODY INTERNATIONAL INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:        July 17, 2020<br>Time:        9:00 AM<br>Courtroom:   5<br><br>Complaint Filed:  March 7, 2016 |

## SUMMARY OF THE ARGUMENT

This is a claims-made settlement.  Claims totaled $50,032.  Plaintiffs' argument that there is a $20 million fund is false.  Not only does that argument contravene the law, the parties expressly agreed that the cap on claims in the Settlement Agreement was not a fund.

M&R's demand for $6.1 million in attorneys' fees has no legal or factual support.  We are aware of no case, and Plaintiffs have cited none, where a Court awarded fees to plaintiffs' counsel that are multiples greater than the class recovery, let alone more than ***120 times*** the class recovery, as Michelman & Robinson ("M&R") requests here.

None of the factors for a lodestar analysis support M&R's request.  On the factor of greatest importance, benefit to the class, the numbers speak for themselves.  M&R fails even to inform the Court that class claims total $50,032—a startling omission in a plaintiff's motion for fees.  The billing record M&R provided to support its lodestar is replete with questionable time entries and is not a reliable basis from which to award fees.

Rhapsody advised Plaintiffs early that claims would be low due to an impending settlement by an overlapping class for the same claim, and offered to settle right away to avoid the cost of litigation.  The parties agreed on terms by May 2017, but after Rhapsody rejected Plaintiffs' fee demand, Plaintiffs dragged out the litigation for their own benefit, to enhance their lodestar.  This has been to the detriment of their class, for whom relief has been delayed.  The evidence shows that it was Plaintiffs, not Rhapsody, who refused to bring the settlement to a close—a tactic that would have been self-defeating for the financially strapped Rhapsody.  If the Court awards fees, the only fee adjustment that is justified under the law is a negative multiplier.

Nor does the time required or the difficulty of the case provide a justification for the more than 3,700 hours they have billed.  The parties never litigated any issues of novelty or complexity.  None of the issues related to the claim itself were litigated, nor were class action issues.  For the most part the parties engaged in settlement efforts and discovery disputes.

The Court should deny M&R's request for $103,067.52 in expenses because it has failed to provide adequate detail and many claimed costs appear to be unreasonable if not questionable.

# <u>TABLE OF CONTENTS</u>

*<u>Page</u>*

SUMMARY OF THE ARGUMENT ...................................................................................... i

INTRODUCTION ............................................................................................................... 1

PROCEDURAL OBJECTION ............................................................................................ 2

STATEMENT OF FACTS .................................................................................................. 2

I.    M&R's Fee Request Should Be Denied ................................................................... 4

    A.    Plaintiffs' Assertion That The Settlement Includes A $20 Million Fund is False ............................................................................................................. 4

    B.    M&R's Lodestar Is Wildly Inflated and Its Time Records Are Unreliable ............ 7

        1.    Class recovery is the most important factor in awarding fees ...................... 7

        2.    M&R's time and labor bears no relation to the Class' recovery. ................. 8

        3.    This case did not pose "difficult" or "novel" questions. ............................. 9

        4.    M&R's "similar cases" argument undermines its fee request ...................... 9

        5.    M&R failed to exercise billing judgment. .................................................. 10

    C.    A Positive Multiplier Is Rare, And In This Case, Undeserved. ........................... 10

    D.    Any Lodestar The Court Credits Should Be Reduced By A Negative Multiplier .................................................................................................... 11

II.   M&R's Expenses Are Excessive And Unexplained .......................................... 14

III.  M&R's Conduct Is Sanctionable ...................................................................... 15

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Barden* v. *City of Sacramento*,
   2013 WL 2421741 (E.D. Cal. June 3, 2013)...................................................... 5

*Blum* v. *Stenson*,
   465 U.S. 886 (1984) ................................................................................. 11

*Camp Drug Store, Inc.* v. *Cochran Wholesale Pharm*,
   897 F.3d 825 (7th Cir. 2018) ........................................................................ 6

*Campbell* v. *Nat'l Passenger R.R. Corp.*,
   718 F. Supp. 2d 1093 (N.D. Cal. 2010) ......................................................... 14

*Ferrick* v. *Spotify USA Inc.*,
   2018 WL 2324076 (S.D.N.Y. May 22, 2018) .............................................. 9, 10

*Gonzalez* v. *Diversified Real Prop. Mgmt. & Bus. Servs., Inc.*,
   2010 WL 10105755 (C.D. Cal. Jan. 4, 2010)................................................. 15

*Hensley* v. *Eckerhart*,
   461 U.S. 424 (1983) ............................................................................... 7, 10

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................... 4, 6

*In re Kekauoha-Alisa*,
   674 F.3d 1083 (9th Cir. 2012) ...................................................................... 3

*Johnson* v. *MGM Studios*,
   2018 WL 5013764 (W.D.Wash. Oct. 16, 2018),
   *aff'd*, 943 F.3d 1239 (9th Cir. 2019) ...................................................... 6, 7, 8

*Lopez* v. *Youngblood*,
   No. 07-CV-0474, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ....................... 6

*Louima* v. *City of New York*,
   2004 WL 2359943 (E.D.N.Y. Oct. 5, 2004) .................................................... 4

*Matter of Evangeline Ref. Co.*,
   890 F.2d 1312 (5th Cir. 1989)................................................................... 4, 5

*Pearson* v. *Green Tree Servicing, LLC*,
   2015 WL 632457 (N.D. Cal. Feb. 13, 2015)............................................ 4, 10,11

*Quesada* v. *Thomason*,
   850 F.2d 537 (9th Cir. 1988)........................................................................ 8

*Shirrod* v. *Dir., Office of Workers' Comp. Programs*,
   809 F.3d 1082 (9th Cir. 2015)...................................................................... 7

*Stanger* v. *China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) .................................................................................................. 5

*Stern* v. *Does*,
    2011 WL 13124449 (C.D. Cal. May 4, 2011) ........................................................................ 8

*Stetson* v. *Grissom*,
    821 F.3d 1157 (9th Cir. 2016) .............................................................................................. 5

*Transbay Auto Serv., Inc.* v. *Chevron U.S.A., Inc.*,
    No. C 09-04932 SI, 2013 WL 843036 (N.D. Cal. Mar. 6, 2013) .......................................... 11

*U.S.* v. *Associated Convalescent Enters., Inc.*,
    766 F.2d 1342 (9th Cir. 1985) ............................................................................................ 15

*Vines* v. *Welspun Pipes, Inc.*,
    2020 WL 3062384 (E.D.Ark. Jun. 9, 2020) .................................................................. 10, 12

*Williams* v. *MGM–Pathe Commc'ns. Co.*,
    129 F.3d 1026 (9th Cir.1997) ................................................................................................ 6

### Statutory Authorities

17 U.S.C. § 115(d) ...................................................................................................................... 3, 8

17 U.S.C. § 115(e) ........................................................................................................................... 8

L.R. 54-5(a)-(b) ............................................................................................................................... 2

### Additional Authorities

4 Newberg on Class Actions, §13:7 (5th ed.) ................................................................................... 6

Manual for Complex Litigation 4th Class Actions, Sect. 21.71 ....................................................... 6

RHAPSODY'S MEMORANDUM RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

# INTRODUCTION

The touchstone for attorneys' fees in a class action is reasonableness. Yet M&R wants this Court to award it fees equal to over ***120 times*** the class recovery—without pointing to a single case supporting such an unreasonably lopsided result. It justifies its request for an unprecedented fee award based largely on the false argument that it achieved a $20 million settlement fund. There is no truth behind that assertion. This is a claims-made settlement. ***The claims total $50,032.*** This number was all-but-final at the time Plaintiffs filed their brief, yet, remarkably, they omit this central fact. Instead, they try to deceive the Court into believing this is a common fund settlement, even though there is nothing "fund-like" about this settlement under the law, and the parties ***expressly disclaimed*** in the Settlement Agreement that the settlement cap was a "fund."

Also a distortion is Plaintiffs' argument that it had to "spend an extensive amount of time to secure the benefits for the Class members." Br. 6:15–16. As Plaintiffs acknowledge, the fundamental terms of the settlement were agreed to three years ago. Shortly thereafter, Rhapsody rejected an appallingly high fee demand for what had been a year of mostly-stayed litigation and a quick agreement on settlement terms. The hours M&R billed after Rhapsody's rejection, by and large, were not for the sake of the Class—the material settlement terms did not change—but for its own benefit: to drag out the litigation to build its lodestar, and to increase financial pressure on Rhapsody to accede to its fee demand. That kind of conduct should not be rewarded.

Plaintiffs attempt to deceive the Court further by implying it was Rhapsody that "threatened the viability" of the settlement. Br. 6:14–15. Never once did Rhapsody threaten to pull out of the settlement. Those threats came exclusively from M&R. Rhapsody wanted the case to settle right away, because it knew, and had advised Plaintiffs, that claims would be low; and over time, the existence and cost of litigation were negatively affecting its struggling business. The theme promoted by Plaintiffs—that it was Rhapsody that prolonged the litigation—would have been self-defeating for Rhapsody and is implausible on its face.

In reality, M&R has used the three years since agreeing to settle to manufacture controversies to run up its fees. It did so all the while littering its correspondence, and now its motion, with self-serving claims that Rhapsody was to blame for its fees, in anticipation of this

1    very motion.  No beneficial policy supports the result M&R seeks.  To the contrary, what M&R

2    proposes is at odds with the fundamental principles that the most important consideration in a fee

3    award is benefit to the class, and that the interests of counsel should align with the interests of the

4    class.  Class members would have been paid much earlier but for M&R's tactics.

5         This Court would not be the first to award counsel an appropriate fraction of what the class

6    recovered in a claims-made case, or even zero.  But it would be the first to award fees that are a

7    multiple of the class recovery—much less 120 times that amount.  Rhapsody respectfully requests

8    the Court not break this new ground in a case which itself broke none.

9                              **PROCEDURAL OBJECTION**

10        M&R's failure to meet and confer before bringing this motion is grounds for denying the

11   motion.  L.R. 54-5(a) & (b)(1) (requiring meet and confer before bringing fee motion); Court's

12   Standing Order for Civil Cases ¶ 1 ("Any failure to comply with any of the rules and orders may

13   be deemed sufficient grounds for monetary sanctions, dismissal, entry of default judgment, or

14   other appropriate sanctions.").  This is one in a long line of rule violations by M&R in this case,

15   acknowledged by the Court.  *See, e.g.*, Dkt. 124, Dkt. 195, n. 2.

16                              **STATEMENT OF FACTS**

17        As Plaintiffs acknowledge, the parties agreed on the fundamental terms of settlement in a

18   Memorandum of Understanding ("MOU") signed back in May 2017.  Br. 2; Kramer #1 ¶¶ 2–7.[1]

19   Although those terms never changed, M&R refused to sign the Settlement Agreement until late

20   January 2019, some 16 months after that agreement was reached.  *Id.* ¶¶ 7–41.  Why the delay?

21        The Settlement Agreement was virtually complete and ready to sign in the fall of 2017—at

22   which time Rhapsody advised Plaintiffs it would neither agree to their fee demand of over $5

23   million, nor negotiate in that range.  *Id.* ¶ 8–16, 20–21.  M&R's temper flared, and from that point

24   forward the settlement train left the track.  *Id.* ¶¶ 16–24.  Mr. Michelman called off the settlement

25

26   ---

   [1]  The Declaration of Karin Kramer In Support of Rhapsody's Request to Deny Plaintiff's Motion
27   for Fees and Costs or for a Negative Multiplier is referred to as "Kramer #1."   The second
   declaration of Karin Kramer regarding M&R's billing practices is referred to as "Kramer #2."
28   Plaintiff's brief is "Br."  All citations and quotations are omitted and all emphasis is added.

1    and instructed his team to redirect their efforts towards discovery.  *Id.* ¶¶ 17–19.  Plaintiffs never

2    mention this pivotal fact, just as they do not (and cannot) cite a single material change from the

3    May 2017 MOU that had any impact on the Class.[2]

4         Over the following 13 months, while Plaintiffs engaged in activities that increased their

5    lodestar, they refused to specify any issue in the Settlement Agreement that still needed to be

6    resolved.  *Id.* ¶¶ 20–41.  They instead concocted issues around Rhapsody's financial documents,

7    first falsely claiming Rhapsody had not produced them, then demanding different documents, then

8    asking to see documents again, and, finally claiming, again falsely, that Rhapsody was impeding

9    their ability to sign the Agreement by refusing to permit their "expert" to review its financial

10   documents.  *Id.* ¶¶ 17–18, 22-23, 26–35, 37–41.  It turned out their alleged expert was Mr.

11   Michelman himself, and the so-called impediment to obtaining his signature on the Settlement

12   Agreement was a sham.  *Id.* ¶¶ 30–34, 37–41.

13        During this period, five motions were filed—all by Plaintiffs.  Kramer #2 ¶¶ 17–18.  The

14   only two they prevailed on were to remove confidential documents they filed in the public record.

15   *Id.* ¶ 17.  Judge Corley also permitted them to review certain Rhapsody financial documents, but at

16   their own expense at Rhapsody's Seattle office.  And she barred them from seeking fees for that

17   work.   *Id.* ¶ 18.   Rhapsody did defend itself against these motions and achieved favorable

18   outcomes, which appears to be what Plaintiffs mean when they refer to Rhapsody's "inappropriate

19   hyper-aggressive tactics [that] interfered with completion of the settlement . . ."  Br. 2:19–20.[3]

20        Rhapsody agrees this was an unusual case, but only in the sense that Congress repealed the

21   statute at issue because streaming services could not comply with it as written.  A new law, the

22   Music ***Modernization*** Act of 2018 ("MMA"), eliminates the Section 115 procedure for obtaining

23   compulsory licenses, validating Rhapsody's position that the law was obsolete.  17 U.S.C. §

24   115(d).  In fact, because there was nothing Rhapsody could do to make the then-existing process

25

26   [2] The Court may properly consider the parties' settlement negotiation history.  *E.g., In re*
27   *Kekauoha-Alisa*, 674 F.3d 1083, 1094 (9th Cir. 2012) (court can consider a "settlement offer to the
     degree such evidence is relevant to the calculation of reasonable attorneys' fees").

28   [3]   There were other motions after the Agreement was signed, brought by both parties.  A list of
         (footnote continued)

workable, the parties' Settlement Agreement did not require Rhapsody to change its practices.  In addition, the resolution of this lawsuit was preceded by a massively larger industry-wide settlement engineered by the National Music Publishers Association ("NMPA"), the organization representing the overwhelming majority of copyright owners of musical works—Plaintiffs' alleged Class—that resolved almost all of the Class' claims and released their claims against Rhapsody, just as Rhapsody had said would happen from the start.  Kramer #1 ¶ 41; Kramer #2 ¶ 2.  Unsurprisingly, the Class here has made claims totaling just $50,032.  *See* Dkt. 209-1,  Supp. Declaration of  Jonathan Shaffer ("Shaffer Decl.") ¶¶ 14-17.[4]

## ARGUMENT

### I.   M&R's Fee Request Should Be Denied

The Court "ha[s] an independent obligation to ensure that the [fee] award, like the settlement itself, is reasonable."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Where an award would be "excessive, [the Court] has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."  *Pearson v. Green Tree Servicing, LLC*, 2015 WL 632457, at *11 (N.D. Cal. Feb. 13, 2015).

### A.   Plaintiffs' Assertion That The Settlement Includes A $20 Million Fund is False

M&R admits the lodestar method is "more appropriate" but argues the Court alternatively can award 30% of what it falsely claims is a $20 million fund.  Br. 3–4, 12–13.  M&R blatantly misrepresents the Settlement, the Class' recovery, and the law—conduct which independently has caused other courts to deny fees.  *E.g.*, *Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1325 (5th Cir. 1989) ("all fees should be denied" where claimant "made misrepresentations in his fee applications"); *Louima v. City of New York*, 2004 WL 2359943, at *4 (E.D.N.Y. Oct. 5, 2004).

*First, **there is no $20 million "common fund" here.***  The Settlement is claims-made, which, in form, and for the purpose of awarding fees, is distinct from a common fund settlement.  Dkt. 208-4 ("SA") ¶¶ 35–36.  The characteristics of a fund are that money is set aside to pay the

---

the motions and their outcomes are attached to Kramer #1 as Exhibit 23.

[4]  Additional claims of $8,757 from one claimant are still under review as of June 26.  *Id.*

class, the fee comes out of the fund, and what is remaining either reverts to the defendant, or more commonly goes to a charity with some relationship to the case.  *See* 4 Newberg on Class Actions, §13:7 (5th ed.).  This settlement has a cap with none of those characteristics.  Rhapsody has not paid into any "fund," much less one that astronomically exceeds its assessment of what claims would be.  SA ¶¶ 35–36; *see also* Declaration of Rhapsody CFO Scott Javor ("Javor Decl.") ¶¶ 3-8.  Fees will be an additional charge to Rhapsody over claims, and because no money went out, there is nothing to revert to Rhapsody or a charity.  Moreover, the operative cap is $10 million, not $20 million, which would have only activated if claims exceeded $10 million and certain other unlikely improvements to Rhapsody's financial status occurred.  The claims total of $50,032 has rendered that a moot point.  M&R knew this when it filed its brief.

M&R's misrepresentation that there is a fund is belied by its own Approval Brief.  Dkt. 207.  There, M&R states the truth:  "***This is a claims made settlement without a fund.***"  *Id.* 3; *see also id.* 11.  M&R's misrepresentations in its Fee Brief are therefore willful.  That alone is reason to deny its fee motion.  *See Matter of Evangeline Ref. Co.*, 890 F.2d at 1325.

The Settlement Agreement could not be clearer on the point: "***Plaintiffs will not claim in any manner that this provision changes the settlement cap to a fund***" and they "***will take no position contrary to the fact that this provision does not present an issue of reverter***."  SA ¶¶ 32, 86.  The Agreement forecloses M&R from falsely positioning the settlement as a fund or requesting a percentage of a cap.  *Barden v. City of Sacramento*, 2013 WL 2421741, at *2–5 (E.D. Cal. June 3, 2013) (enforcing settlement's fee provisions to deny request).

*Second*, M&R misrepresents the law.  It cites *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016), as giving courts "discretion" to take a fund percentage in a claims-made case.  Br. 3.  But the Court there limited such "discretion" "[t]o calculate the fee in a ***common-fund case.***"  821 F.3d at 1165 (citing common fund case *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 739 (9th Cir. 2016)).  M&R also cites a treatise out-of-context, suggesting claims-made and common fund settlements are "fully synonymous" for percentage analysis.  Br. 3, n.3.  Not so; the treatise recognizes the difference—"[b]y contrast, in a claims made settlement, the defendant's liability is never greater than the precise amount the class claims"—and notes that courts treat them

1    differently for purposes of fees.   4 Newberg on Class Actions, §13:7 (5th ed.).   The **lone** case

2    M&R cites that takes a percentage of a cap is an outlier and is not authority for the approach they

3    urge on this Court.  *Lopez v. Youngblood,* No. 07-CV-0474, 2011 WL 10483569 (E.D. Cal. Sept.

4    2, 2011).   The fee motion in *Lopez* was unopposed.   Plaintiff used its brief wholesale as its

5    Proposed Order, which the Judge signed without changes, never addressing the issue.   *Id.*, Dkts.

6    142 & 150.   Further, *Lopez* is based on *Williams v. MGM–Pathe Commc'ns. Co.,* 129 F.3d 1026

7    (9th Cir. 1997), but *Williams* is a common fund case and does not speak to the issue either.

8         The law does not countenance counsel reaping a windfall by taking a percentage of an

9    imaginary fund the class never receives because the resulting outcome—fees to the attorneys

10   dwarfing payments to the class—is unconscionable and unacceptable.   *See, e.g., Johnson v. MGM*

11   *Studios*, 2018 WL 5013764, at *6 (W.D. Wash. Oct. 16, 2018) ("settlement did not create a true

12   common fund as it did not establish a single sum," and reducing fee request that "dwarfed" class

13   recovery), *aff'd*, 943 F.3d 1239 (9th Cir. 2019); Manual for Complex Litigation 4th  Class Actions,

14   Sect. 21.71 ("In cases involving a claims procedure … the court should not base the attorney fee

15   award on the amount of money set aside to satisfy potential claims.   Rather, the fee awards should

16   be based only on the benefits actually delivered.   It is common to delay a final assessment of the

17   fee award … until the distribution process is complete.").   *See also, In re Bluetooth*, 654 F.3d at

18   942 (percentage not appropriate for "megafund").

19        The Seventh Circuit recently rebuked Plaintiffs' tactic.   *See Camp Drug Store, Inc. v.*

20   *Cochran Wholesale Pharmaceutical*, 897 F.3d 825, 832-833 (7th Cir. 2018).   Just as here, counsel

21   argued the claims-made "cap" was a "fund."   *Id.*   The court was not fooled, declined to award a

22   percentage of the cap, and affirmed reduction of fees incurred to a third of what the class actually

23   recovered (awarding less than $75,000).   Its reasoning is on-point:

> Immediately after the case was filed, Cochran expressed interest in settlement.
> Cochran provided financials … to Camp Drug Store.   There was no paper
> discovery; no depositions were taken; and no substantive motions were filed. …
> "[T]here was no real litigation in this case."   The district court concluded that class
> counsel's requested fee of nearly a quarter million dollars for merely filing a
> complaint and negotiating a settlement bore little relationship to market reality.

28   *Id.* at 833.   Those are the precise facts here.   If any fees are awarded (and for reasons stated herein

1  and in the Kramer Declarations they should not be), M&R should recover no more than 25% of

2  the $50,032 the class has recovered.

### B.   M&R's Lodestar Is Wildly Inflated and Its Time Records Are Unreliable

4       M&R's lodestar calculation is based simply on multiplying its rates times billed time.  Br.

5  5.  But even if 3,700 hours were reasonable for this case, [t]he "product of reasonable hours times

6  a reasonable rate does not end the inquiry."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

7  When viewed in light of the *Kerr* lodestar factors, M&R's calculation is manifestly unreasonable.[5]

8  "The goal of the lodestar method is to produce an award that roughly approximates the fee that the

9  prevailing attorney would have received if representing a paying client."  *Shirrod v. Director,*

10 *Office of Workers' Compensation Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015).  No rational

11 client would pay over $2 million to recover $50,032, especially where, as here, it had been

12 warned, based on specific facts, that its recovery would be low.  Kramer #2 ¶ 2.

### 1.   Class recovery is the most important factor in awarding fees.

14      The single "most critical factor," the value of the Class' recovery, dooms M&R's fee

15 application.  *Hensley*, 461 U.S. at 436.  As the Supreme Court has observed, if counsel "achieved

16 only partial or limited success, the product of hours reasonably expended on the litigation as a

17 whole times a reasonable hourly rate may be an excessive amount."  *Id.*  Here, "excessive amount"

18 is putting it charitably.  M&R has no plausible explanation for charging more than 3,700 hours of

19 time when the Class recovered $50,032.  *See Johnson*, 2018 WL 5013764, at *8 (615 hours

20 unreasonable when class recovered $19,000).  M&R's boilerplate enumeration of make-work

21 tasks does not come close to explaining **why** that work was reasonably necessary to reach

22 settlement and its claim to pursuing "due diligence" is specious.  Br. 5–6, Hanna ¶ 38; Kramer #1

23 ¶¶ 12–41; *see also* Kramer #2.  It was Plaintiffs' burden to justify the hours they spent, and they

24 failed to do so.  *See Johnson*, 2018 WL 5013764, at *8 ("The burden to justify such a

25 disproportionately high number of hours rests with Class Counsel.").

26      Unable to rationalize its fee based on the Class' recovery, M&R seeks a lodestar award

---

28  [5] As discussed *infra*, § I(C), M&R inappropriately addresses the lodestar factors only in the
    (footnote continued)

based on unproven non-monetary benefits.  M&R points to the paragraph in the Settlement Agreement that requires Rhapsody to establish an Artist Advisory Board ("AAB").[6]  The benefit of the AAB provision is unknown, or as M&R puts it, "incalculable," and it may not be counted in the fee calculation.  Br. 1, 10.  Where, as here, such benefits are "largely illusory" and the value is "entirely speculative," they are "properly excluded from consideration."  *Johnson*, 2018 WL 5013764 at *11.  M&R also misrepresents the purpose of the AAB, which it glorifies as providing "oversight" of Rhapsody.  Br. 1, 10.  Nothing in the Settlement endows the board with "oversight" power over songwriter compensation.  SA ¶¶ 49, 51.  Moreover, the issue of artist compensation has now been addressed by the MMA.  17 U.S.C. 115(d)(1)-(2), (e)(15).[7]

### 2.    M&R's time and labor bears no relation to the Class' recovery.

Only time "reasonably necessary" to the "successful prosecution of the case" is compensable.  *See Stern v. Does*, 2011 WL 13124449, at *3 (C.D. Cal. May 4, 2011).  When this case began, M&R told the Court it estimated generating $2-3 million in total fees inclusive of class certification and all discovery including, *e.g.*, 150 interrogatories per side, 300 requests to admit, and up to 20 depositions.  Kramer #1 ¶ 11.  ***None of this came to pass***—and yet, miraculously, M&R's purported lodestar is in that same range.  *Id.*  With the exception of a limited number of documents requests, no formal discovery took place, and class certification was never briefed.  Moreover, it is simply unfathomable that M&R ***reasonably*** should have generated over 3,700 hours of attorney time in a case that was stayed for most of its life.  *Id.* & Kramer #2 ¶ 4-5.  While M&R claims to have used this time to provide "exceptional advocacy for the class," Br. 1, the reality is that this "advocacy" was for the most part for its own benefit, serving only to inflate its fee demand.  The vast majority of the extra time put into the case after Rhapsody rejected their fee demand ***changed nothing for the Class.***  Kramer #1 ¶¶ 2, 13.  The material terms

---

context of seeking a multiplier.  Rhapsody does not address factors M&R otherwise concedes.

[6]    Plaintiffs erroneously characterize that provision as a change in practice.  Br. 3, 10.  The practice at issue here was an alleged failure to properly license, not maintaining an AAB.

[7]    For these reasons, decisions awarding fees in the civil rights context have no bearing, for such settlements typically include meaningful injunctive relief.  *Quesada v. Thomason*, 850 F.2d 537, (footnote continued)

of the settlement never changed.[8]

Nor was there anything complex about this case. To the extent there might have been complex issues regarding class certification, damages calculations, or the application of Section 115, none of those issues were litigated.  Plaintiffs' counsel are experienced litigators and describe their practices as "complex litigation."  Negotiating settlement in a case with one set of lawyers per side and engaging in discovery disputes are not the stuff of a complicated case.

### 3.   This case did not pose "difficult" or "novel" questions.

M&R posits this as a case where liability was "a foregone conclusion" and the Class would "almost certainly" win, and suggests this is why Rhapsody was prepared to settle from the outset. Br. 2.   In light of the foregoing, M&R tries to bolster its fee demand by arguing the case concerned a "cutting edge," "unsettled legal issue … which ultimately had to be addressed by the legislature" in the MMA.  Br. 1, 8.  To the extent Plaintiffs suggest this lawsuit was the stimulus for the MMA, they are rewriting history.  Reform of the pre-MMA Section 115 of the Copyright Act and the specific licensing issues raised by Section 115 had been the subject of Congressional and Copyright Office attention for over 15 years.  *See* Rhapsody's Final Approval Br. (Dkt. 209) at 3–5.  It is true the MMA itself was ***introduced*** after the litigation began, but it had been years in the making.  *Id.*

Regardless, M&R's "novelty" arguments are irrelevant because the parties never litigated such issues.  The only substantive motion in the case—a motion to dismiss Rhapsody was forced to file when M&R would not agree for more time to conduct settlement talks—was jurisdictional and did not implicate these issues.  Kramer #2 ¶ 10; Dkt. 48.

### 4.   M&R's "similar cases" argument undermines its fee request.

M&R directs the Court to compare this case to the *Spotify* class action addressing the same claim.  Kramer #2 ¶¶ 8;  Br. 11.  If *Spotify* shows anything, it is that M&R's fee request is pure fantasy.  Class counsel in *Spotify* got $13 million because the class recovered "an immediate cash

---

540 (9th Cir. 1988) (they do not "depend on obtaining substantial monetary relief").

[8] There is no evidence that $2.1 million is a "customary fee" for recovering $75,000.  Br. 11.

payment of $43.45 million"—nearly 900 times the cash payment here—and an "overall settlement value [that] exceed[ed] $112.5 million." *Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018).  Moreover, the court found that counsel in that case, unlike here, earned their fees because, *inter alia,* in addition to the exceptional recovery, "the parties [had] exchanged a significant amount of information" in discovery and "experts [had] performed substantial work to evaluate the value of the case."  *Id.* at *5.  In *Spotify,* the class' recovery was almost three times class counsel's fee; here M&R wants a fee that is over 120 times the Class' recovery.  There is no "similar case" that has approved this kind of upside-down result.

### 5.      M&R failed to exercise billing judgment.

M&R was required to "make a good faith effort to exclude from its fee request hours that are excessive, redundant, or otherwise unnecessary" because "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary."  *Hensley*, 461 U.S. at 434.  While it says it reduced its fees by 3%, Br. 4, its billing records show this vanity reduction did not make a dent in M&R's improper time entries.  M&R's bills exhibit a total lapse of billing judgment.  *See Vines v. Welspun Pipes, Inc.*, 2020 WL 3062384, at *4-9, 10 (E.D.Ark. Jun. 9, 2020) (awarding $1 in fees where "no reasonable, efficient law firm would practice this way").

The following are a few examples: charges for 25 billers, including 19 lawyers, in a case that was stayed for most of its life (Kramer #2 ¶¶ 4–11); charges for educating themselves on class action and basic federal procedure (*id.* ¶ 14); charges for nearly 8 hours of time spent cleaning up their own public filing of confidential documents (*id.* ¶ 17); and charges for 13.3 hours for a hearing that lasted 20 minutes (*id.* ¶ 19).  There are many more such examples in Kramer #2.

### C.      A Positive Multiplier Is Rare, And In This Case, Undeserved.

M&R does not address, much less meet, the test for a positive multiplier.  Black letter law provides that positive multipliers are appropriate "only in ***rare and exceptional*** circumstances," as when "attorneys faced ***exceptional risks*** of not prevailing."  *Perdue*, 559 U.S. at 552-53; *Pearson*, 2015 WL 632457, at *11 (only in "extraordinary cases" and "the trial court is never *required* to add a fee enhancement").

M&R has failed to justify any multiplier at all.  Br. 7.  In another misapplication of the

1   law, M&R attempts to almost triple (2.87) its purported fees on the basis of factors already

2   considered in setting the lodestar, including: novelty and difficulty; the amounts involved and

3   results obtained; experience and reputation of the attorneys; the time required, and the customary

4   fee.  Br. 7-12.  Supreme Court precedent is clear that an "enhancement may not be awarded based

5   on a factor subsumed in the lodestar calculation."  *Perdue*, 559 U.S. at 553; *Pearson,* 2015 WL

6   632457, at *7, 12 (denying multiplier request based on lodestar factors).[9]   In any event, as

7   demonstrated above, these factors do not support M&R's inflated lodestar and therefore cannot

8   support a further enhanced lodestar.  *See supra* at 7–10.

9        M&R cannot meet and does not even advise the Court what the relevant factors are..  As

10  discussed above, there were no "exceptional risks" to prevailing (*supra* 1–3), nor can the Class'

11  $50,032 recovery be credibly characterized as "exceptional" (*supra* 8-9), at least not in a positive

12  sense.  No positive multiplier is warranted, and M&R's lodestar should be rejected.

13        **D.      Any Lodestar The Court Credits Should Be Reduced By A Negative Multiplier**

14        To the extent the Court grants fees, it should apply a substantial negative multiplier.  What

15  negative multiplier to choose is within the Court's discretion, but Rhapsody suggests it should be

16  at a level that reduces their fee demand so it is commensurate with the Class' actual recovery.[10]

17  For instance, a multiplier of -0.99 would result in fees of $21,324.19, or a little over a third of the

18  Class' recovery.  Examples of M&R's conduct warranting a negative multiplier are in Kramer #1,

19  and include such things as holding the settlement hostage over fees and making misrepresentations

20  to the Court.  Add to that Plaintiffs' claim that the Settlement creates a $20 million fund, which is

21  both false and has been damaging to Rhapsody's business.  Javor Decl. ¶¶ 4, 8.

22        M&R's claim that Rhapsody caused "twenty months of disputes" around the settlement,

23  Br. 2, is designed to deflect attention from M&R's strategy to run up its fees and punish Rhapsody

24

25  [9]  *See also Perdue*, 559 U.S. at 553 (excluding "novelty and complexity" and "quality of …
    performance"); *Blum v. Stenson*, 465 U.S. 886, 900, (1984) (excluding "results obtained");
26  *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, No. C 09-04932 SI, 2013 WL 843036, at *2
    (N.D. Cal. Mar. 6, 2013) (excluding "time and labor required" and "awards in similar cases").
27  [10]   Plaintiffs seem to believe that their ***estimate*** of damages in the case is relevant to the fee
28  award.  They have provided no authority for the proposition, which is at odds with the cited law.

1    for failing to accede to its fee demand.  *Vines*, 2020 WL 3062384, at *8-10 (awarding fee of $1

2    due to counsel's "attempts to drum up billable hours by extending the case" and "hanging over

3    Defendant's head the threat of the fees that might be incurred if it did not pay the unreasonable

4    (unearned)" fee demanded, which was "unacceptable").  And its tale—that Rhapsody "engaged in

5    … tactics … designed to increase the amount of time and effort (and thus fees)"—makes zero

6    sense.  Br. 14.  Rhapsody had no motive to do so, given its knowledge that Plaintiffs would seek to

7    foist those fees on Rhapsody (as they have done), and that its own fees would increase as a

8    consequence.  It would be a classic case of cutting off one's nose—and maybe its ears too—to

9    spite one's face.  Rhapsody's motive from day one was to settle early for financial and business

10   reasons.  Kramer #1 ¶ 4; *see also* Javor Decl. ¶ 4.

11        "Exhibit A" of M&R's effort to pin its fees on Rhapsody is the dispute over the language

12   on the claims website—which is the dispute they highlight in their motion.  Br. 2, 6.  They cite this

13   particular dispute because Judge Corley expressed displeasure with Rhapsody, but they fail to

14   mention the Court also admonished Plaintiffs' counsel for their dereliction of duty as class

15   counsel.  Dkt. 182 (5/23/19 Tr. 21:1-18) (J. Corley: "it turns out they didn't read it. That doesn't

16   make them look good either. They're representing a class, and they didn't even bother to look what

17   was on the website or in that form until, you know, a week later").

18        To orient the Court, this is the dispute over the NMPA language Rhapsody placed on the

19   *draft* clams website, marked in red, and apprised M&R of by email (attaching the draft website)

20   *before* the website went live and thus before any class member had seen it.  Kramer #1 ¶¶ 35–36.

21   M&R waited to object until nine days after the site launched, then gave Rhapsody 24 hours to take

22   it down, before running to Court to file an emergency motion.  *Id.*  Plaintiffs led Judge Corley to

23   believe in their papers and at the hearing that they were unaware of the disputed language until

24   May 13, 11 days *after* Rhapsody had sent them the draft.  *Id.*  At the hearing, Judge Corley asked

25   Ms. Mauri if she had reviewed the email from Rhapsody before the website live?  *Id.* ¶ 35.  Ms.

26   Mauri responded, "I don't recall."  *Id.*  Our review of M&R's billing records shows this was false.

27   Ms. Mauri's billing entry shows that in fact, on May 4, *before* the website launched, she spent

28

close to an hour looking at the draft website and "investigating" the language.  *Id.*[11]  Plaintiffs thus could have objected before a single class member saw the website and, instead of an ultimatum, there could have been a discussion—a meet and confer.  Instead they did nothing for nine days—and then claimed the matter was an emergency.

"Exhibit B" of M&R's effort to claim Rhapsody is responsible for M&R's billings is M&R's shape-shifting demands regarding Rhapsody's financial disclosures.  *See id.* ¶¶ 12–34, 37-41.  Most notably, M&R falsely claimed Rhapsody was preventing its expert from reviewing the financial records it had produced by marking them AEO.  *Id.* ¶¶ 30–31, 33.  Rhapsody explained that it merely needed to know who the expert was to verify he or she did not work for a competitor, but Plaintiffs refused this common litigation request.  Before Judge Corley, Ms. Mauri conceded she knew of no reason she could not tell Rhapsody the expert's name.  Judge Corley then asked Ms Mauri: who is your expert?  Kramer #1, Ex. 15 (08/16/18 Tr. 5:14–17); *id.* ¶ 31.  Ms. Mauri responded, as she did above when asked about the website:  "I don't recall."  *Id.*  As it turned out, M&R had no financial expert.  Instead, its claimed "expert" turned out to be its lead attorney, Mr. Michelman.[12]  *Id.* ¶ 33.  Of course, nothing prevented Mr. Michelman from reviewing AEO documents.  *Id.*  (Additional facts supporting a negative multiplier are set forth in Kramer #1.)

Finally, contrary to M&R's contention that Rhapsody will reap a "windfall" if M&R is not given $6 million, Br. 14, it is M&R that stands to improperly reap a windfall if its motion is granted.  As M&R acknowledges, most class members were owed less than $1.00 per song, but

---

[11]   Judge Corley ruled that she had no jurisdiction to hear the matter as per Rhapsody's argument, but strongly urged Rhapsody to remove the disputed language and, as M&R repeats often, criticized us for including it.  During that hearing, upon hearing Judge Corley's position, Rhapsody removed the language at issue.  By this discussion, Rhapsody does not mean to suggest the result necessarily would have been different, although the fact that Plaintiffs waited until the website was live for nine full days before raising it certainly put the matter in a different posture, both for Rhapsody and for the Court.   Regardless, Rhapsody does not believe the Court should countenance dishonesty, as recently uncovered in M&R's billing records, especially when accusing opposing counsel of misconduct.

[12]   Mr. Michelman told Rhapsody that he was a financial expert because he is a "Harvard business school alumni."  *Id.*  Harvard has no record of his matriculation other than in some five-day
   (footnote continued)

most are receiving $35.  Br. 9.  Moreover, as Rhapsody's Final Approval brief explains, Rhapsody was not a bad actor that needs punishing.  Dkt. 209.  It was caught, like the rest of the industry, in the tentacles of an outdated law, from which Congress finally freed it.  Between this case, and the NMPA settlement, it has more than paid for whatever mechanical royalties may have been owed.

There is a compelling policy issue here though.  Plaintiffs are asking this Court to issue an unprecedented order for fees that would bear no relationship to the class recovery.  Thus the real issue is whether precedent will exist as a result of this case that future plaintiffs' counsel can rely on to seek fees many multiples of the class recovery, diverging from current jurisprudence which makes the outcome for the class pre-eminent.

## II.     M&R's Expenses Are Excessive And Unexplained

M&R fails to carry its burden to show that it is entitled to recover an additional $103,067.52 in expenses.  "As with attorneys' fees, an applicant seeking reimbursement of costs has the burden of providing sufficient detail to support its request."  *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010).  Further, the "requested expenses must be reasonable."  *Id.*  M&R offers no details regarding its costs and fails to offer any defense of their necessity or reasonableness—other than to summarily assert, without proof, that they were "necessary to secure the resolution of this litigation."[13]   Some of the questionable expenses include: $10,605.21 in travel expenses (*e.g.*, whose travel expenses are included; is M&R charging Rhapsody for other than coach accommodations (such as the private jet Mr. Michelman claimed to have used for his trip to Seattle), costly hotels, and expensive restaurants).  These expenses, like everything else, must be reasonable.  The biggest ticket item, $16,247.75, is for unexplained "Miscellaneous."  A litigation support service fee of $15,936.75 is similarly questionable since the billing record shows Rhapsody already is being asked to pay hourly rates for litigation support personnel.  Rhapsody also does not know what "Publish Fees" covers, for $2,635.00.

Also questionable is "Expert Fees," the amount of which is redacted.  Adding up all of the

---

executive education programs, for which he received a certificate of attendance.  *Id.* ¶ 34.

[13]   Counsel in M&R's cited case provided far more substantiation, including "description of the
(footnote continued)

1   unredacted costs shown on their cost page (*i.e.*, everything except experts) equals the same

2   $103,067.52 M&R requests as costs. That means the number under the redaction for "Expert

3   Fees" has to be zero. It seems unlikely that "experts" are working for zero. And if Plaintiffs were

4   not planning to charge for the experts, which also seems unlikely, then why include them in their

5   costs?[14] This line item appears to be an effort to support their claim to have been working "closely

6   and extensively" with experts, Br. 5:23–25, but the math does not support them.

7   **III.     M&R's Conduct Is Sanctionable**

8         Rhapsody has never asked for sanctions, although Plaintiffs have done so more than once.

9   Nor is Rhapsody asking for sanctions now. But it does want to bring to the Court's attention that

10  the conduct Plaintiffs have engaged in, in particular, asserting that it obtained a $20 million (or

11  even $10 million) fund, in contravention of the clear law and express terms of the Settlement

12  Agreement. *E.g.*, *Gonzalez v. Diversified Real Prop. Mgmt. & Bus. Servs., Inc.*, 2010 WL

13  10105755, at *5 (C.D. Cal. Jan. 4, 2010) (sanctions for distorting document's meaning). It is a

14  blatant misrepresentation to the Court. *Law360* published the information, which caused business

15  harm to Rhapsody. Javor Decl ¶ 8. It was entirely predictable that it would be published because

16  the wire services picked up the preliminary approval briefing as well.

17        Furthermore, the newly-revealed evidence that M&R was untruthful with the Court in its

18  briefing and oral argument concerning the disputed website language is sanctionable as well. *U.S.*

19  *v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985) ("An attorney

20  does not simply act as an advocate for his client; he is also an officer of the court. As such, an

21  attorney has a duty of good faith and candor in dealing with the judiciary.")**.**

22                                            <u>**CONCLUSION**</u>

23        The Court should deny M&R's motion except to the extent it seeks a $2,500 enhancement

24  award for each Plaintiff pursuant to the Settlement. If the Court decides to awards fees, Rhapsody

25  submits no more than 25% of the class recovery of $50,032 would be an appropriate amount.

---

reasons for the travel expenses." Br. 14 (citing *In re Immune Response Secs. Litigation*).

[14]   Rhapsody does not object to $2,500 enhancement awards, as provided in the Settlement (¶ 33).

1    DATED:  June 26, 2020                    Respectfully submitted,

2                                             QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
3

4

5                                             By   /s/ Karin Kramer
                                                   Karin Kramer
6                                                  Thomas C. Rubin
                                                   Cory D. Struble
7

8                                             *Attorneys for Rhapsody International Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28