QUINN EMANUEL URQUHART & SULLIVAN, LLP
Karin Kramer (Bar No. 87346)
karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Thomas C. Rubin (*Pro Hac Vice*)
tomrubin@quinnemanuel.com
600 University Street, Suite 2800
Seattle, Washington 98101
Telephone: (206) 905-7000
Facsimile: (206) 905-7100

Cory D. Struble (*Pro Hac Vice*)
corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7082
Facsimile: (212) 849-7100

*Attorneys for Rhapsody International, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

RHAPSODY INTERNATIONAL INC.,

Defendant.

Case No. 4:16-CV-01135-JSW

**DEFENDANT RHAPSODY INTERNATIONAL INC.'S NOTICE OF MOTION AND MOTION TO STRIKE THE EXPERT DECLARATION OF KENNETH M. MOSCARET**

Date: July 17, 2020
Time: 9:00 AM
Courtroom: 5

Complaint Filed: March 7, 2016

**NOTICE OF MOTION AND MOTION TO STRIKE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 17, 2020, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendant Rhapsody International Inc. will and hereby does move for an Order striking paragraphs of the expert declaration of Plaintiffs' expert, Kenneth M. Moscaret. The particular paragraphs Rhapsody moves to strike are set forth in the Memorandum of Law accompanying this Motion.

This Motion is based on this Notice of Motion, the following Memorandum of Law, the pleadings and papers on file herein, and any evidence and argument presented to the Court at the hearing.

DATED: June 26, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Karin Kramer*
Karin Kramer
Thomas C. Rubin
Cory D. Struble

*Attorneys for Rhapsody International Inc.*

# TABLE OF CONTENTS

***Page***

STATEMENT OF THE ISSUE TO BE DECIDED .......... 1

PARAGRAPHS RHAPSODY SUBMITS SHOULD BE STRICKEN .......... 1

LEGAL STANDARD .......... 1

STATEMENT OF FACTS .......... 1

ARGUMENT .......... 2

A. The Following Moscaret Conclusions Utterly Lack Foundation .......... 3

B. The Following Moscaret Opinions Are Based On Erroneous Assumptions .......... 5

CONCLUSION .......... 7

# TABLE OF AUTHORITIES

**Page**

## Cases

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
587 F. Supp. 1266 (N.D. GA. 2008) .......... 2

*Claar v. Burlington N.R.R. Co.*,
29 F. 3d 499 (9th Cir. 1994) .......... 2

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 1, 3

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) .......... 3

*Ferrick v. Spotify USA Inc.*,
2018 WL 2324076 (S.D.N.Y. May 22, 2018) .......... 4, 5

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .......... 2, 3

*Kumho Tire Co. Ltd, v. Carmichael*,
526 U.S. 137 (1999) .......... 1

*Montgomery v. eTrppid Techs., LLC*,
2008 WL 820072 (D. Nev. Mar. 24, 2008) .......... 2

*Tesoro Refinery & Mktg. Co., LLC v. Pacific Gas & Electric Co.*,
2016 WL 1558874 (N.D. Cal. Jan. 14, 2016) .......... 2

## Rules and Regulations

Fed. R. Evid. 702 .......... 1

Fed. R. Evid. 703 .......... 1

## STATEMENT OF THE ISSUE TO BE DECIDED

Consistent with Federal Rules of Evidence 702 and 703, and *Daubert v Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), may Kenneth M. Moscaret offer his opinion that the fee Plaintiffs seek is reasonable, given that most of his opinions lack foundation, are based on facts and assumptions which are incorrect, he has failed to provide any methodology for determining reasonableness, nor applied that methodology to the facts.

## PARAGRAPHS RHAPSODY SUBMITS SHOULD BE STRICKEN

Rhapsody submits that the following paragraphs of Mr Moscaret's Declaration should be stricken in full: 4, 16, 17, 18, 19, 23, 29-37, 56-59, 67, and 70. (Rhapsody does not admit or agree to the statements in the remaining paragraphs of his declaration.)

## LEGAL STANDARD

Expert opinion must be based on "good grounds." *Daubert*, 509 U.S. at 590; *see also Kumho Tire Co. Ltd, v. Carmichael,* 526 U.S. 137 (1999) ("conclud[ing] that *Daubert*"s general principles apply" to non-scientific subject matter). Federal Rule of Evidence 702 requires that an expert base his testimony on "sufficient facts or data," use "reliable principles and methods" to form his opinion, and "reliably appl[y] the principles and methods to the facts of the case." *Id. See also* Fed. R. Evid. 703 (expert to rely on facts or data that experts in the field would use).

## STATEMENT OF FACTS

Based on M&Rs billing record, M&R first sent Mr. Moscaret materials to review on Friday, May 29, 2020. Hanna Decl. (Dkt. 208-2), at 226. Eleven days later, June 9, 2020, Mr. Moscaret sent his declaration to Ms. Hanna who spent about half an hour reviewing it. *Id.* at 228. During that time, Ms. Mauri spent 6.2 hours, including her preparation time, talking with Mr. Moscaret. *Id.* at 227–29. Ms. Hanna spent 1.3 hours preparing for and conferring with him. *Id.* at 227. We do not know how much time Mr. Moscaret spent on reviewing the case and preparing his declaration because Plaintiffs have redacted that number from their billing record. *Id.* at 229.

We acknowledge that Mr. Moscaret has experience as a fee expert. Based on his recitation of his credentials, however, it may be that most of his work relates to fee disputes where paying clients were billed, which leads to more restraint in billing. *See* Dkt. 208-5 ("Moscaret") ¶¶ 6–8,

12–13. In an opinion critical of Mr. Moscaret, a class action where he opined on behalf of Plaintiffs' fees, the Court recognized the well-known fact that client review, absent in a class action on plaintiffs' side, is a check on unreasonable billing. *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 587 F. Supp. 1266, 1270 (N.D. GA. 2008). The *Enron* case he highlights was a class action that resulted in a huge common fund on which the fee award was based. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) ("*Enron*"). He was one of many experts in the case and had the limited role of reviewing the lodestar cross-check and the staffing matrix. *See id.* at 741.

**ARGUMENT**

Much of Mr. Moscaret's Declaration has no discernible foundation. Nor does he identify principles or methods he used to form his opinions. This appears to be an instance where Mr. Moscaret was brought in late in the game, did not have adequate knowledge to form opinions, and merely reverse-engineered an opinion to support Plaintiffs' fee demand *See Claar v. Burlington N.R.R. Co.,* 29 F. 3d 499, 502-03 (9th Cir. 1994). Such a "transparent effort to support [Plaintiffs'] theory" . . . amounts to written advocacy . . . akin to a supplemental brief." *Tesoro Refinery & Mktg. Co., LLC v. Pacific Gas & Electric Co.,* 2016 WL 1558874 at *3 (N.D. Cal. Jan. 14, 2016). He has been criticized in the past for cursory work. *Montgomery v. eTrppid Techs., LLC,* 2008 WL 820072, at *9 (D. Nev. Mar. 24, 2008) (rejecting his opinion for, among other things, his "brief two-day review of documents relevant to this fee dispute. . .").

Other than talking to Ms. Hanna and Ms. Mauri, Ms. Moscaret's work consisted of reviewing some case documents from PACER, a staffing chart M&R prepared, and some other vaguely identified Court decisions and ethics opinions. Moscaret ¶¶ 20–24. He does not tell us which of the materials from PACER he reviewed, so we have no idea how incomplete or biased a picture he may have obtained.

Rhapsody submits that Mr. Moscaret should not be permitted to supplement with this missing information. As an experienced expert working with experienced counsel, he was well aware of what was needed to support a credible expert opinion and should not be permitted to backfill his deficiencies now that Rhapsody has identified them.

**A. The Following Moscaret Conclusions Utterly Lack Foundation**

According to Mr. Moscaret: "Class Counsel also exercised billing judgment by 'self-auditing' and culling its time entries before submitting its fee motion." Moscaret ¶ 3. Mr. Moscaret provides zero support for this assertion and no examples. We have had M&R's billing records since June 2018 for that period of the case, due to a Court Order. We compared the billings from that period that we received then, to the consolidated billings they submitted as Exhibits A and B. to the Hanna Declaration (Dkt. 208–2). Our review shows nothing was "culled," at least not for that period of the case. *See* Kramer Decl. #2 (Dkt. 213) ¶ 7. They appear to be exactly the same.

Mr. Moscaret concludes Class Counsel "efficiently staffed" the case. Moscaret ¶¶ 19, 23. In the *Enron* case he features in his declaration, he defines efficient staffing as: "as few attorneys as necessary doing as much of the legal work on a case as possible." *Enron*, 4:01-cv-03624, Dkt. 5903, ¶ 47. He does not explain the methodology he used to determine how 25 billers over 4 years could be an efficient staffing plan for this case. He does not appear to know how long the case was stayed nor that it was always headed towards settlement and that the terms of the Settlement that were finally signed did not change any of the terms agreed to in May 2017. Nor does he look at specific items where multiple billers worked on a single task to explain how such staffing could be deemed efficient. *See* Kramer Decl. #2 (Dkt. 213) ¶¶ 6–11. He does not mention how he squares his "efficiency" determination with the fact that other than a minimal number of document requests, there was no discovery.[1] This is the essence of prohibited *ipse dixit* (because I said so) expert opinion. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Mr. Moscaret concludes this is "complex intellectual property class action" that required a substantial investment of time by M&R. His evidence is that intellectual property cases are complex, yet he admits he "do[es] not hold [him]self out as an expert on the customs and practices

---

[1] There were some third party document subpoenas.

in the music industry, including Internet streaming music services like Rhapsody." Moscaret, ¶¶ 16, 29, 31, 67. His other evidence for his conclusion is that Rhapsody stated in a Joint Case Management Statement that ***the fact-gathering related to its jurisdictional Motion to Dismiss*** "is complex." Moscaret ¶34. His analytical leap from fact-gathering for one motion to a conclusion that the whole case was complex does not make it over the gap. More to the point, it does not appear he took into account that none of the potentially complex issues in the case were ever litigated, nor was class certification sought. Neither of those key facts is mentioned in his declaration. This was a copyright class action, but no copyright issues were litigated and no class action issues were litigated, other than one dispute over language on the claims website, so where is the complexity? Counsel sparred over discovery-related issues. Neither a few discovery disputes, nor settlement negotiations, make a case complex and certainly not for experienced counsel.

Mr. Moscaret's assumption that the potential benefits to this class were $10 - $20 million, Moscaret ¶ 57, suggests he does not understand class action law, did not carefully read the terms of the Settlement Agreement, was not aware of the National Music Publishers Association's ("NMPA") settlement with Rhapsody, and also was not aware of other issues, such as pre-existing licenses, that would figure into the actual amount of claims. For the reasons set forth in Rhapsody's opposition to Plaintiffs' fee motion, this case was not a common fund settlement, under the law or under the express terms of the Settlement Agreement. The case he uses to bolster aspects of his opinion, the *Spotify* class action, underscores the point. That was a common fund Settlement and the features described in the law (establishment of a fund, a deposit into the fund, attorneys' fees charged against the fund rather than separately payable by defendant, and a provision saying left over funds will not revert to the defendant)[2] are all there, along with many uses of the term "fund." *Ferrick v. Spotify USA Inc.,* No. 16-8412-cv (S.D.N.Y.), Dkt. 176-3, e.g, ¶¶ 1.3, 1.5, 1.15, 1.26, 1.5, 3. No such language appears in this Settlement Agreement. The only

[2] *See* Dkt. 208-4 (Settlement Agreement) ¶¶ 35–36; *see also* 4 Newberg on Class Actions, § 13:7 (5th ed.).

mention of a fund is to disclaim that there is one. Mauri Decl. (Dkt. 208-4) ¶ 86. Although he carefully words his opinion to talk about "potential" benefits to the class of $10 - $20 million, he does not contradict Plaintiffs' position that those sums constitute a fund and are a proper basis for determining a percentage fee award. *See* Moscaret ¶¶ 59, 70.

Mr. Moscaret's conclusion that the Artist Advisory Board ("AAB") established as part of the settlement constituted a significant non-monetary benefit is useless. Moscaret ¶¶ 17, 58. He makes no attempt to put a value on the AAB. And his statement that it is the "first-ever" such group is not supported with any evidence. If he meant to say it was the "first ever" within Rhapsody that is true, but so what? Just because something is first does not give it a monetary value, let alone, a monetary value that can support a fee demand of over $6 million. He provides no basis for including it in his determination that the fees Plaintiffs request are reasonable.

**B. <u>The Following Moscaret Opinions Are Based On Erroneous Assumptions</u>**

Mr. Moscaret favorably compares this case to the *Spotify* class action to reach his conclusion that M&R's fees were reasonable, a truly spurious comparison. Moscaret ¶¶ 33, 37. The two cases are based on the same claim under Section 115 and share very similar complaints, but that is where the similarity ends. The *Spotify* docket is 291 page, including reams of pages of appearances.[3] *See Ferrick v. Spotify USA Inc.,* No. 16-8412-cv (S.D.N.Y.). This case, which went on for 18 months longer, has a docket of 17 pages. *Spotify* is orders of magnitude larger than this case and the settlement attracted scores of objectors, all of whom needed to be addressed. *Spotify* ended in a $44 Million dollar common fund and total damages of over $112 million. *See Ferrick v. Spotify USA Inc.,* 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018). The Court awarded Class Counsel there $13 million from the common fund, cutting $2 million from the award. *Id.* at *10. M&R lost its bid to be class counsel in the case and the Court denied their fee petition in full stating: "Michelman & Robinson did not provide any unique or substantial benefit to the class." Dkt. 418, p. 25. She also took note of M&R's uncooperative conduct stating that M&R had "declined to share information with class counsel once they were appointed"—shades of this case.

---

[3] The exact number of pages may vary plus or minus a small amount depending on printers.

*Id.* Thus Mr. Moscaret's conclusion that the two cases are "very similar" and that Spotify should be regarded as a similar case for purposes of a fee analysis should be rejected. This conclusion is so wrong, that the Court would be justified in rejecting his entire declaration on this basis alone because it exposes how far he is willing to go to offer unsupportable opinions.

From reading Ms. Mauri's declaration, Mr. Moscaret assumed that the potential "economic stakes" in the litigation were "conservatively estimated" at $100 Million; and he seems to believe that the reasonableness of fees can be judged against Plaintiffs' own estimates of amounts potentially at stake, a proposition with no authority provided based on estimates that were divorced from reality Moscaret ¶¶ 17, 56. That is *ipse dixit* squared. He does not appear to know that M&R was told early on about the impending settlement with the NMPA that would all but eliminate Plaintiffs' class, nor does he appear to know there were only 209 claimants who claimed $50,302.[4] *See* Rhapsody's Opposition to Plaintiffs' Fee Motion (Dkt. 210) at 1, 4, 5, 12; Kramer Decl. #1 (Dkt. 212) ¶¶ 41 45; Kramer Decl. #2 (Dkt. 213) ¶ 2. How can Mr. Moscaret purport to know what a reasonable fee is in this case without considering the actual scope of relief in the case? Certainly the LA Unified School District, for whom he says he managed the legal bills of 50 outside counsel, never would have paid $6 Million, or even $2 Million for a dispute worth $50,032. Moscaret ¶ 8. He would have encouraged his client to look at their potential reward considering all risks, especially the pendency of a prior overlapping settlement that was in process, before incurring endless sums to pursue it.

Finally, what is the basis for Mr. Moscaret's assumption that this litigation "brought to a head" years of legal issues concerning Section 115 and related issues? Moscaret ¶ 31. He does not identify the basis and his assumption is dead wrong. These issues had been percolating in the industry and Congress for years. *See* Rhapsody's Final Approval Br. (Dkt. 209) at 3–5. He does not appear to have any knowledge of this undisputed fact. *See also* Moscaret ¶ 31 (disclaiming knowledge of customs and practices in the music industry).

---

[4] These facts were not final at the time Plaintiffs submitted his declaration, but they were close enough to final that he should have been aware of the range of the class relief.

**CONCLUSION**

If the Court strikes the paragraphs of Mr. Moscaret's declaration argued above, what remains are Mr. Moscaret's recitation of his background and Counsel's rates, which we are not challenging for purposes of their fee motion only. His opinion that M&R's fees were reasonable cannot stand on those two points and, respectfully, should be rejected.

DATED: June 26, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Karin Kramer*
Karin Kramer
Thomas C. Rubin
Cory D. Struble

*Attorneys for Rhapsody International Inc.*