UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LOWERY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>RHAPSODY INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 16-cv-01135-JSW<br><br>**ORDER RE PLAINTIFFS' MOTION FOR FEES**<br><br>Re: Dkt. No. 300 |

    Before the Court is Plaintiffs' motion for attorney's fees following remand from the Ninth Circuit. Having considered the Ninth Circuit's opinion, *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985 (9th Cir. 2023), and the parties' briefs regarding the calculation of attorney's fees (Dkt. Nos. 305, 308–312), the Court awards Plaintiffs' counsel fees in the amount of $86,022.08 and costs in the amount of $13,162.

## BACKGROUND

    On March 7, 2016, Plaintiffs initiated this class action against Defendant Rhapsody, "generally alleging direct copyright infringement under the Copyright Act." (Dkt. No. 207-2 at 3.) Plaintiffs specifically alleged that Rhapsody "infringed [Plaintiffs] exclusive rights to reproduce and distribute their musical works by streaming them without voluntary or compulsory licenses." (*Id*.) The parties reached a settlement in January 2019, and in December 2020, the Court granted final approval of the settlement. (Dkt. No. 243.) The settlement agreement was a "claims-made settlement for '[o]wners of mechanical distribution and/or reproduction rights in Qualifying Registered Works and Qualifying Unregistered Works that were made available or played on the Rhapsody music service in the United States during the period from March 7, 2013 until February 15, 2019.'" (Dkt. No. 258 (quoting Dkt. No. 243 at 3).) The terms of the settlement agreement

included: (1) "payments of $35.00 to copyright holders for each qualifying registered work that was played in its entirety at least once on Rhapsody," (2) "payments of $1.00 to copyright holders for each qualifying unregistered work that was played in its entirety more than 24 times on Rhapsody," (3) "$2,500 enhancement awards to class representatives," and (4) "the creation of an Artist Advisory Board, consisting of ten members and initially chaired by a class representative, 'to advance the parties' mutual goals of improving and protecting artists' rights, promoting Rhapsody's service . . . and providing compensation to artists . . . .'" (*Id.* (quoting Dkt. No. 208-4).)  The agreement capped Rhapsody's payment of class members' claims at $20 million.[1]  (Dkt. No. 207 at 17.)

"Notice of the settlement was published in an industry publication and general circulation publication, in print and online."  (Dkt. No. 258 at 2.)  "The settlement administrator received 605 claims from 331 unique claimants and distributed a total of $52,841.05."  (*Id.*)

Plaintiffs filed a motion for attorney's fees and costs on September 12, 2020, seeking $6,120,042 in attorney's fees.  (Dkt. No. 208 at 3.)  Plaintiffs' motion was referred to a magistrate judge for a report and recommendation.  (Dkt. No. 242.)  The magistrate judge calculated a lodestar figure of $1,720,441.57 and recommended a 0.5 multiplier to the lodestar.  (Dkt. No. 258 at 6–17.)  The magistrate judge further recommended a costs award of $13,162.  (*Id.* at 18.)  The Court adopted the lodestar figure of $1,720,441.57 but declined to apply the 0.5 multiplier, finding "no reason to multiple the actual reasonable billable figure by any negative or positive multiplier."[2]  (Dkt. No. 272 at 2.)  Rhapsody appealed the Court's decision to the Ninth Circuit.

On appeal, the Ninth Circuit reversed and remanded the Court's award of attorney's fees. *Lowery*, 75 F.4th at 985.  The Ninth Circuit found the "fee award was not reasonable under Rule 23" and instructed the Court to "determine the class action settlement's actual value to the class members and then award attorneys' fees proportional and reasonable to the benefit received by the class."  *Id.* at 991, 995.

---

[1] More specifically, "the parties agreed to a claims made settlement with a cap of $10 million (which may increase up to $20,000,000 in the event that Rhapsody's financial representations were inaccurate)."  (Dkt. No. 207 at 17.)

[2] The Court also awarded costs in the amount of $13,162.  (Dkt. No. 272 at 1.)

## ANALYSIS

"In awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (quotations and citation omitted). In the Ninth Circuit, "there are two primary methods to calculate attorneys['] fees: the lodestar method and the percentage-of-recovery method." *Id*. "Under the lodestar method, the court multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim v. Allison*, 8 F.4th 1170, 1180–81 (9th Cir. 2021). "The court may then 'adjust' the award 'by an appropriate positive or negative multiplier reflecting . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id*. (citation omitted). "Benefit to the class is the '[f]oremost' consideration." *Id*. (citation omitted). "The percentage-of-recovery approach may be used 'where the defendants provide monetary compensation to the plaintiffs' and class benefit is easy to quantify." *Id*. "Under this method, 'the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee.'" *Id*. (citation omitted).

Plaintiffs' counsel, Michelman & Robinson LLP ("M&R"), seeks attorneys' fees in the amount of $1,200,000. (Dkt. No. 308 at 4.) M&R argues that "[t]his lawsuit and the threat of substantial liability helped to precipitate both Rhapsody's settlement with the National Music Publisher's Association (NMPA) and the enactment of the Music Modernization Act of 2018 (MMA)" and that "[t]hese benefits together with the direct monetary benefits totaling $358,903.77 . . . support a reasonable fee award in the amount of $1.2 million." (*Id*.) Notably, M&R does not explain how they calculated an award of $1.2 million based on the lodestar of $1,720,441.57. Rhapsody counters that the actual class relief only totals $52,841.04 and Plaintiffs should be awarded no more than 25% of this amount, which amounts to $13,210.26. (Dkt. No. 305.)

A.   **Lodestar Calculation**

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

3

hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).  The Court once again begins with the lodestar figure of $1,720,441.57.  (Dkt. Nos. 258, 272.)

The Court may adjust the lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment . . . .'" *Id*. (citation omitted).  "Foremost among these considerations, however, is the benefit obtained for the class." *Id*.  "Thus, where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'" *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983)).

### 1. Benefit Obtained for the Class

The Court previously declined to apply a negative multiplier to the lodestar figure, finding there was "no bright-line rule regarding whether the lodestar should be cross-checked against the claimed amount (here, $52,841.05) or the total amount of the cap placed on possible recovery (here, $20,444,567)."  (Dkt. No. 272 at 2.)  The Ninth Circuit found this was error and expressly held that "courts must consider the actual or realistically anticipated benefit to the class—not the maximum or hypothetical amount—in assessing the value of a class action settlement." *Lowery*, 75 F.4th at 992.  The Ninth Circuit directed the Court to "justify any fee award . . . by comparing it to the benefit provided to the class." *Id*.  The Ninth Circuit further directed the Court to "value the settlement by starting off with the $52,841.05 payment to the class members, not the hypothetical $20 million cap[,]" but left open the question of whether settlement administration costs, the Artist Advisory Board ("AAB"), and class representative travel reimbursements and enhancements awards should be included in the calculation of benefits to the class.[3]  *Id*. at 993.

The Court finds that $52,841.05 of the $251,400.72 in settlement administration costs

---

[3] The Ninth Circuit "d[id] not decide how the district court should treat these costs on remand." *Id*. at 993 n.3.

4

should be included in the settlement value. The settlement agreement explicitly provided that Rhapsody would "be responsible for the costs of the Claims Administrator, up to" $300,000 (Dkt. No. 207-2 ¶¶ 7, 34), and the Claims Administrator provided a post-distribution accounting reflecting administrative fees and costs in the amount of $251,400.72.[4] (Dkt. No. 248 ¶ 8.) Although courts have found these types of administrative costs to be benefits to the class, the Ninth Circuit has cautioned that "it may not make sense to include notice and administration costs [in the calculation of settlement value] if they approach or exceed the value of the monetary and injunctive relief benefits to the class." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 680 (9th Cir. 2025); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("Of course without administration and therefore administrative costs, notably the costs of notice to the class, the class would get nothing."). Here, the settlement administration costs are nearly five times the amount paid to class members. The Court therefore finds it would be unreasonable to include the total administration costs in calculating the settlement value to the class. *See Redman*, 768 F.3d at 630 ("[A]lthough the administrative costs benefit class counsel and the defendant as well as the class members, the district court's fee award incorrectly treated every penny of administrative expense as if it were cash in the pockets of class members. By doing so the court eliminated the incentive of class counsel to economize on that expense—and indeed may have created a perverse incentive; for higher administrative expenses make class counsel's proposed fee appear smaller in relation to the total settlement than if those costs were lower."). The Court finds it reasonable to allocate $52,841.05—the amount Rhapsody paid to class members—of the administrative costs as a benefit to the class.

    The Court also includes the Artist Advisory Board's ("AAB") annual budget of $30,000, the class representative enhancement awards of $10,000, and travel reimbursements of $1,500 in the settlement value. The AAB is "designed to advance the parties' goals of improving and protecting artists' rights" and will be chaired by David Lowery. (Dkt. No. 155 at 11.) The Court finds this to be a benefit to the class. Accordingly, the Court finds that the value of the settlement

---

[4] The Claims Administrator did not provide a further breakdown of the administrative costs.

totals $147,182.10.

The difference between the settlement value—$147,182.10—and the lodestar figure—$1,720,441.57—is staggering. The Court therefore finds it appropriate to substantially reduce the lodestar figure.

Although this case spanned almost four years, there was very minimal discovery and motion practice. In fact, it seems the case primarily revolved around settlement. Plaintiffs filed their complaint in March 2016, and the parties began mediation as early as October 2016. (Dkt. No. 81 at 2.) The parties attempted mediation again in April 2017 and signed a Memorandum of Understanding related to settlement in May 2017. (*Id*. at 2–3.) The parties attempted to negotiate a settlement agreement from May to August of 2017, and attended a mediation session again in April 2018. (*Id*. at 3.) The case remained stayed, at the request of the parties, from April 2017 through January 2018. (Dkt. Nos. 67, 71.) The parties continued settlement discussions throughout 2018, and in January 2019, the parties reached a settlement agreement. (Dkt. No. 155 at 10.) Throughout this time, the parties engaged in nominal discovery and motion practice. Despite class counsel's focus on settlement, the class only received a total of $52,841.05. The Ninth Circuit found that the result for the class members was "minimal" and "measly" and further noted that "class counsel harbored little realistic probability that they would recover substantial compensation for the class." *Lowery*, 75 F.4th at 988, 994. In light of these circumstances, the Court finds it appropriate to reduce the lodestar by 95% to $86,022.08.[5]

B.  **Percentage-of-the-Fund Cross-Check**

The Ninth Circuit advised the Court to cross-check its lodestar calculation with the percentage-of-recovery method to "ensure that [the fee award] is reasonably proportional to the benefit provided to the class." *Lowery*, 75 F.4th at 993–94. "The percentage-of-recovery method expresses fees as a percentage of a recovered common fund, calculated to be sufficient to provide

---

[5] M&R argues that fees in the amount of $1.2 million are justified, as this litigation "precipitat[ed] the NMPA settlement" and the enactment of the Music Modernization Act of 2018 ("MMA"). (Dkt. No. 308 at 7–8.) This is mere attorney argument. Class counsel does not provide any evidentiary support for this argument, and in fact, the record reflects that Rhapsody was already in negotiations with the NMPA when Plaintiffs filed their lawsuit. *Lowery*, 75 F.4th at 989.

6

1   class counsel with a reasonable fee." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769,
2   784 (9th Cir. 2022) (quotations and citation omitted).  "If there is no common fund, the [c]ourt
3   uses a constructive fund." *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2022 WL
4   16528137, at *6 (N.D. Cal. Oct. 28, 2022).  "The Court may include settlement administration
5   costs, litigation expenses, and the allotment for attorneys' fees in its valuation of a constructive
6   fund for its percentage of recovery cross-check analysis because this is the total amount
7   defendants were willing to spend to settle the case." *Id*.  "The benchmark percentage is 25%, but,
8   similar to the lodestar, the benchmark percentage can be adjusted upward or downward, depending
9   on the circumstances." *In re Apple Inc. Device Performance Litig.*, 50 F.4th at 784 (quotations
10  and citation omitted).

11       Here, the constructive common fund amounts to $358.903.77.  This amount includes the
12  class payment of $52,841.05, the settlement administration costs of $251,400.72, the AAB budget
13  of $30,000, the class representative enhancement awards and travel reimbursements of $11,500,
14  and litigation expenses of $13,162.  A fee award of $ $86,022.08 is 24% of $358,903.77.  This
15  falls below the 25% benchmark utilized in the Ninth Circuit.  *See Lowery*, 75 F.4th at 994 ("If the
16  cross-check reveals that a contemplated fee award exceeds 25% of the benefit to the class, the
17  court should take a hard and probing look at the award because this disparity may suggest that the
18  fee amount is unreasonable."); *Johnson v. MGM Holdings, Inc*, 943 F.3d 1239, 1242 (9th Cir.
19  2019) ("If the lodestar amount exceeds the 25% benchmark for percentage-of-recovery awards, a
20  second look to evaluate the reasonableness of the lodestar calculation is appropriate.").  The Court
21  therefore finds the fee award of $86,022.08 is reasonable.
22  //
23  //
24  //
25  //
26  //
27  //
28  //

**CONCLUSION**

The Court awards Plaintiffs' attorneys' fees in the amount of $86,022.08 and costs in the amount of $13,162.[6]

**IT IS SO ORDERED.**

Dated: 9/10/25

_____
JEFFREY S. WHITE
United States District Judge

---

[6] This order does not affect the separate award for costs on appeal, issued in favor of Rhapsody in the amount of $27,182.13. (Dkt. Nos. 305 at 7; 304.)